A. R. BEAM et al. v. E. B. JENNINGS et al.

*Evidence—Secretary of State—Certificate to a Grant—Practice on Appeal.*

1. The clerk of the Secretary of State has no power to certify to and affix the great seal of the State to copies of grants and other papers from the Secretary of State's office, to be used in evidence. The statute contemplates that this officer should do all official acts himself and does not permit any of them to be done by a deputy.

2. Where an action was brought for a tract of land describing it as a whole, and incompetent evidence was admitted which related only to a part, the judgment of the Supreme Court will be for a *venire de novo* generally, and it will not grant a new trial only as to that portion of the land affected by the incompetent evidence.

CIVIL ACTION for the recovery of land, tried before *Avery, Judge*, and a jury, at Spring Term, 1886, of CLEVELAND Superior Court.

There was a verdict and judgment for the plaintiffs, and the defendants appealed.

The facts appear in the opinion.

*Mr. John F. Hoke*, for the plaintiffs.
*Mr. W. P. Bynum*, for the defendants.

MERRIMON, J. This action was brought to recover the possession of the land specified and described in the complaint.

On the trial, the Court allowed the appellees—the appellants objecting—to put in evidence what purported to be a "certified copy of a grant from the office of the Secretary of State," to which was attached the Great Seal of the State, and the following is a copy of the certificate appended thereto :

"STATE OF NORTH CAROLINA,
*Office of Secretary of State,*
RALEIGH, 31st October, 1881.

" I certify the above to be a true copy from the records on file in this office.

(Signed)                              W. L. SAUNDERS.

Per W. P. BATCHELOR, *Clerk.*"

The appellant contended that the clerk of the Secretary had no authority to make such certificate. The Court held that he had, and this ruling is assigned as error.

We think the Court should have sustained the objection to the certificate.

The Secretary of State is a high and respectable executive officer of State, charged with a variety of important—many of them delicate—duties, that require his personal attention, supervision and scrutiny. His office is created by the Constitution, and his duties are prescribed by statute.

It seems to be the purpose of the Legislature that he shall personally and alone exercise official authority in the exercise of the functions of his office. There is no statutory provision that he shall have an assistant, deputy, or clerk, so designated, required to take an oath of office, and exercise any official authority. He is simply allowed two thousand dollars *per annum,* "for clerical assistance    *    *    *    in the discharge of the duties of his office." This does not imply *official* assistance—that the Secretary shall appoint a deputy, or a clerk, one or more, who are to take an oath of office, and hold office for a definite period of time. Plainly he may

employ such " clerical assistance " as he may need, from time
to time, sometimes more, at others less, as occasion and
his convenience may require, and such assistance he can
change or dispense with at his convenience and pleasure,
having in view the public need.

By " clerical assistance " is meant, not official assistance,
but such as aid in the exercise of official authority by the
Secretary himself, such as writing letters, making entries of
record, copying grants and the like service.   The word "cler-
ical" as employed in the statute, to designate a kind of help,
has no very definite meaning ; is not a very apt word for
the purpose intended, but it is obvious the Legislature did
not intend to extend its meaning so as to imply official aid ;
if so, it would have designated the person to render such aid,
as deputy, assistant, clerk, or by some such designation, with
a term of office, and required the incumbent to take an oath
of office.   Nor did it intend that any person whom the Sec-
retary might employ to render such assistance, should have
authority to use the seal of the department of State, and cer-
tify copies of records, grants, and other important documents
and papers deposited and kept in the Secretary's office, under
his name, written by such person, or otherwise.   It cannot
be presumed or inferred that the Legislature contemplated
so loose and hazardous a practice.   It would practically dis-
pense with official sanction.   The law contemplates not sim-
ply the application of the seal of office in the authentication
of copies of records, grants, and the like, but as well official
sanction, manifested by the signature of the proper officer.

This is important and necessary as a guaranty that the seal
has been properly applied, and the copy is true as it purports
to be.   It would certainly be a very latitudinous and unwar-
ranted interpretation of the words, "clerical assistance," to
hold that they imply that every person whom the Secretary
of State may find it necessary to employ to aid him in the
discharge of the " clerical" duties of his office as above indi-

cated, shall take an oath of office and represent him in the exercise of official authority.   He might, sometimes no doubt would, require half a dozen or more clerks, copyists and letter writers.   Shall they all be sworn as officers ?   Shall they all represent and act for the Secretary officially in the authentication of copies of records, grants and other papers ?   If not, which of them shall be sworn ?   Which of them shall represent him by virtue of the statute, officially, and as to what matters and things ?

We learn from the present intelligent clerk of the Secretary, that he has not taken an oath of office, although he has been there several years, and that it is not the practice to require assistants in the office of the Secretary to take such oaths, and for the reason, no doubt, that he interprets the statute as not requiring them to do so.

The interpretation we have given the statute in respect to its purpose to require the Secretary of State to exercise his official authority only by himself, is strengthened by the fact, that as to some other executive officers of State, subordinate assistant officers are allowed, and their duties and authority prescribed.   Thus, the Governor has a private secretary and an executive clerk; the Treasurer has a chief clerk, who is deputy treasurer, and may perform the duties of the Treasurer, except signing checks, and he has other assistants.   The Auditor also has one clerk at a stated salary, and is allowed a fund to pay for "clerical assistance," as occasion may require.   The purpose to require the Secretary to exercise his official authority in person appears also from the strict provisions of the statute (*The Code*, §3339,) requiring his presence at his office.   It provides that, "the Secretary of State attend at his office in the city of Raleigh between the hours of ten o'clock a. m., and three o'clock p m., on every day in the year, Sundays and legal holidays excepted."   Wherefore this unusual and stringent provision ? What purpose is it to serve?   It seems to us obvious, that

one purpose is, to require this high officer, charged with duties and matters so important to the State and people, to be always present to exercise his official authority in person, and not by deputy. As to him, there is a striking absence of subordinate official aid provided for, and the statutes prescribing his duties and powers, uniformly require in terms, that he shall act officially himself, and not by another, while other statutory provisions in respect to himself and his office preclude reasonable implications and inferences to the contrary.

We are therefore of opinion, that the Court erred in admitting as evidence on the trial, the copy of the grant in question, and the appellants are entitled to a new trial.

The learned counsel for the appellees suggested on the argument, that it sufficiently appears in the record that one part of the land described in the complaint, is unaffected by the error assigned, and as to that part, the judgment ought at all events to be affirmed. The appellants do not consent that this may be done, and moreover, the complaint describes the land as one body. There is but one cause of action alleged, and the judgment embraces all the land in question. The Court cannot undertake thus to divide into sections a single cause of action, and a judgment upon the same, and affirm one part of it, and reverse the other. To do so would be subversive of intelligent procedure and produce confusion.

The judgment must be reversed, and a new trial granted. To that end, let this opinion be certified to the Superior Court according to law. *It is so ordered.*

Error.                                        Reversed.