D. J. RICHARDS v. W. M. RITTER LUMBER COMPANY.

(Filed 23 December, 1911.)

1. Words and Phrases—"Countersign."

The verb "countersign" means "to sign on the opposite side" or in addition to the signature of another, and the noun means "the signature of a secretary or other officer to a writing, or writings, added to that by the principal or superior to attest its authenticity."

2. Same—Grants of Land—Secretary of State.

Within the intent and meaning of our Constitution, Art. III, sec. 16, it is not required that the Secretary of State "countersign" grants of lands and commissions in any particular place or position thereon, and when a grant to the land in controversy is put in evidence by one of the parties and in all respects appears to be regular and authentic upon its face, it will not be held to be defective because the countersignature of the Secretary of State appears on the opposite side of the sheet from the signature of the Governor.

3. Same—"By Command"—Blanks Left in Grant.

When a grant from the State to the land in controversy is relied on by one of the parties, in his chain of title, and the words appear on the grant as follows, "By command," and a blank space followed by the words "Secretary of State," and it further appears that the Secretary of State did not use the blank space evidently left for the purpose, but countersigned properly on the "opposite side" from the signature of the Governor, the countersignature will be held valid, in the absence of evidence to the contrary, it not being required that the words "By command" be used at all in this connection.

4. Same—*Evidence of Authenticity.*

A countersignature appearing to be that of the Secretary of State, on a grant for lands, as follows, "Secretary's office, February 3, 1869. H. J. Menninger, Secretary of State," by the use of the words which show not only that the grant was signed by the "Secretary of State," but in his office, gives evidence of the intent to authenticate, and without more, will be held valid.

5. Grants—Countersignature—Deputy—Interpretation of Statutes.

A deputy clerk of the Secretary of State is not authorized by statute to countersign, in the name of the Secretary, a grant to lands, and his attempt to do so is void; and chapter 512, Laws

RICHARDS *v.* LUMBER CO.

of 1905, validating all grants thus defectively authenticated does not, by its express terms, interfere with vested rights, and therefore not available to the defendants in this case.

**6. Grants—Evidence—Certified—Copies—Registered Copies— Questions for Jury.**

Certified copies by the Secretary of State of abstract of grants filed in his office, may be used in evidence, and "shall be as good evidence in any court as the original" (Revisal, 1596) ; but this does not make them better evidence than the registration of the original (Revisal, sec. 1596) ; and where there is a material discrepancy, it is for the jury to find as a fact which one is correct.

APPEAL by both parties from *Cline, J.,* at Spring Term, 1911, of MACON.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Robertson & Benbow, J. Frank Ray, and George L. Jones for plaintiff.*

*L. C. Bell for defendant.*

CLARK, C. J. Both sides appealed. The plaintiff offered Grant No. 3050. This grant was duly sealed with the great seal of the State with a plat of the land attached, and is signed "W. W. Holden, Governor," and on the opposite side of the sheet are the words, "Secretary's Office, February 3, 1869. H. J. Menninger, Secretary of State," which bears the same date as the grant.

The judge rejected the deed on the ground that it was not "countersigned." In this there was error. There is no decision in the courts of this State, or in any other that we have been able to find, which authorizes this ruling. The word "countersign" comes from the French *"contresigne,"* and the Latin *"contra signum."* Webster's International Dictionary gives this derivation and says the meaning of the verb "countersign" is to "sign on the opposite side," and it has, secondarily, the meaning "to sign in addition to the signature of another." Worcester's, the Century, and Clarkson's Standard Dictionaries all give exactly the same meaning. The Century further says that it means "to superadd a signature." All four dictionaries give the meaning of the noun as follows: "The signature of a

secretary or other officer to a writing, or writings, signed by the principal or superior to attest its authenticity." Words and Phrases gives the same definition.

It is well settled in this State that·when a signature is essential to the validity of an instrument it is not ·necessary that the signature appear at the end, unless the statute uses the word "subscribe." *Devereux v. McMahan,* 108 N. C., 134. This has always been ruled in this State in regard to wills, as to which the signature may appear anywhere. If this is true of a "signature," it must also be true of the word "countersign." It has been often held that the place of signing is a matter of taste. *Adams v. Field,* 21 Vermont, 264; *Attorney-General v. Clark,* 26 R. I., 474; 9 A. and E. Enc., 143; 36 Cyc., 441.

The Constitution, Art. III, sec. 16, provides that there shall be a great seal of the State, and adds: "All grants and commissions shall be sealed with 'the Great Seal of the State,' signed by the Governor, and countersigned by the Secretary of State." But there is nothing in this or in any statute which changes the original meaning of the word, which is to "sign on the opposite side" of the sheet, or its derivative meaning, which is to superadd another signature as "additional evidence of authenticity." Mr. Menninger, the then Secretary of State, evidently construed the word in· its historical sense, to sign on the opposite side of the sheet. He did this, not at random, but officially, because the words used are "Secretary's Office, February 3, 1869. H. J. Menninger, Secretary of State." He also came within the derivative meaning as set out in all the dictionaries, because he thus superadded his signature as proof of the authenticity of the paper. Originally, a grant or order was ·signed by the King and authenticated by the great seal merely, but subsequently, especially after the advent of responsible government, "countersigning" by a minister was required, and this was usually done on "the other side of the sheet," as the word signifies.

The original grant is filed in the record. There is no question made by any one but that it is genuine. This is shown by the great seal of State. When that appears, the signatures

of the Governor and Secretary of State on an instrument, thus issued from the Secretary's office, are presumed to be genuine. They are protected by the statute against forgery and by the presumption of genuineness of the signatures upon an official document thus issued. The register of deeds of the county acts upon such instrument, without any probate, and records it, as was done in this case. A reference to the office of the Secretary of State shows that this grant was duly entered, and that the grant was issued in payment of the sum therein recited. An instrument, unquestionably genuine and authenticated, and issued in consideration of the money duly received by the State therefor, should not be set aside upon any controversy as to where a signature should be placed. The presumption is that the official act of the Secretary was correct, when acting on his own judgment he placed the signature on the opposite side of the sheet and when there is no statute, or decision, requiring it to be placed elsewhere.

The defendant contends that the word "countersign" means to sign on the opposite side of the same page. But there is no statute or decision which provides this, and the place where the defendant says the Secretary should sign is not on the opposite side of the page, but in immediate juxtaposition to the Governor's signature. It is true that there does appear printed at that place the words "By command" and a blank space followed by the words "Secretary of State," but there is no statute requiring this, and all that we know is that the words were put there by the printer. The Secretary of State himself construed the meaning of the word "countersign" to be "to sign on the opposite side" of the sheet, and wrote his name with more formality, "Secretary's office, February 3, 1869. H. J. Menninger, Secretary of State." There is no authority anywhere for the use of the words "By command."

The grant being undeniably genuine, and duly issued upon payment of the consideration, authenticated by the great seal, signed by the Governor and by the Secretary of State, both officially, we cannot hold that it was not "countersigned" because the place where the Secretary added his signature with the title of his office was not at the particular spot on the grant

which the defendant contends for. The essential thing is the additional signature, not its location, with the evidence of the intent to authenticate, which is here shown by the use of the words which show not only that the grant was signed by "the Secretary of State," but in his office.

The defendant offered Grant 3083. The plaintiff objected to this grant because the grant as recorded in Macon County shows that the only indication of countersigning is as follows: "By command. H. J. Menninger, Secretary of State, per T. J. Menninger, Chief Clerk." In *Beam v. Jennings,* 96 N. C., 82, this very point was presented, and the Court held that the statute did not authorize the countersigning of a grant to be done by a deputy or clerk, and therefore that such grant was void. The Legislature of 1905, ch. 512, accepted that view and validated all grants thus defectively authenticated, adding "that nothing herein shall interfere with vested rights." Therefore, as to the plaintiff, this grant 3083 was void and should have been rejected.

It is true that Revisal, 1596, provides that "All abstracts of grants which may be filed in the office of Secretary of State, certified by him as true copies, shall be as good evidence in any court as the original." The defendant, instead of the original, offered an abstract which did not contain the defective countersigning by the chief clerk. The statute does not make the abstract any better evidence than the registration of the original (Revisal, 1598), and the inherent probability is that the words "per T. J. Menninger, Chief Clerk," were copied by the register of deeds in Macon County from the grant as actually issued. It is not probable that it would have ever occurred to him, out of his own head, to transcribe those words if not in the grant. Whereas, the abstract might have been made in the Secretary of State's office with the careless omission of those words. As the abstract is no better evidence under the statute than the record in Macon County, the case should go back, that the jury may find which is the better evidence. The plaintiff may serve notice on the defendant to produce the original grant, and if found, of course it will settle the controversy, as that is the best evidence.

On account of these errors, there must be a new trial, and it is unnecessary to consider the other exceptions in the record.

In defendant's appeal, affirmed.

In plaintiff's appeal, new trial.

HOKE, J., concurring in the result: I concur in the disposition made of the case, being of opinion that, on the testimony, there was a sufficient countersigning of the grants in question, within the meaning of the Constitution and statutes. I am of opinion, further, that under the conditions and careful methods known to exist in the office of the Secretary of State, and of which we may, to this extent, take judicial notice (*Furniture Co. v. Express Co.,* 144 N. C., 639), where a grant, under the seal of the State, has been attested by the Governor and countersigned in the name of the Secretary of State, per his chief clerk, and to the issuance of which no suspicion has attached, and no reason for such suspicion is suggested or shown, the same should be held a valid grant. It should be presumed that such a grant was countersigned in the presence of the Secretary of State and by his direction, and that the case of *Beam v. Jennings,* 96 N. C., 82, to the extent that it contravenes this position, was not well decided, and should be overruled.

ALLEN, J. I dissent from the opinion of the Court on the plaintiff's appeal, and concur on the defendant's appeal, but do not care to do more than note the difference in the facts, and to state, without discussion, my view of the law.

On the plaintiff's appeal, the question is presented of the admissibility of a paper, purporting to be a grant, which was signed by the Governor and the great seal attached, but which had no signature of any officer or clerk on the page which the Governor signed. On the back of this paper appear the words, "Secretary's office, February 3, 1869. H. J. Menninger, Secretary of State," but no evidence was introduced that this indorsement was in the handwriting of H. J. Menninger, or that it was on the paper when it came from the office of Secretary of State.

The Constitution, Art. III, sec. 16, says: "All grants and commissions shall be issued in the name and by the authority

RICHARDS *v.* LUMBER CO.

of the State of North Carolina, sealed with the great seal of the State, signed by the Governor and countersigned by the Secretary of State." This language was construed in 1820 in *Hunter v. Williams,* 8 N. C., 221, a part of it, at that time, being in the Constitution, and a part in a legislative act, and the Court there says: "The Constitution, sec. 36, declares that all grants shall run in the name of the State and bear test and be signed by the Governor. The year after the adoption of the Constitution, the Legislature, at their November session, declares that the Secretary shall make out grants for all surveys returned to his office, which grants shall be authenticated by the Governor and *countersigned* by the Secretary. Act of Assembly 1777, ch. 1, sec. 11. This is the only mode pointed out by the Legislature whereby individuals can acquire a right to the unappropriated lands; and if it be not pursued, no right can be acquired in any other way, sooner than if no mode at all had been pointed out. Nothing, therefore, passed by this instrument, as it is not pretended that Mr. Martin had title individually."

When the Constitution says a grant shall be issued under the great seal, and shall be signed by the Governor, and countersigned by the Secretary of State, I think we may dispense with the seal or the signature of the Governor, if we can hold that it is not necessary for the Secretary of State to countersign.

If evidence of the handwriting on the back of the paper had been introduced, I do not think it would amount to more than an office entry, and it would not be countersigning; but the paper when offered at the trial did not come from the office of Secretary of State, but was produced by the plaintiff, and he offered no evidence of handwriting or as to the time when the indorsement first appeared on the paper. So far as we can see, it may have been written after the paper left the office of Secretary of State.

On the defendant's appeal, it appears that the defendant claimed under a paper purporting to be Grant No. 3083, under the great seal, which was signed by the Governor and countersigned, "H. J. Menninger, Secretary of State, per T. G. Men-

ninger, Chief Clerk." The defendant also offered in evidence a certified copy, from the office of Secretary of State, of the abstract of Grant No. 3083, which was signed by the Governor and countersigned by the Secretary of State. I think the paper was incompetent under the authority of *Beam v. Jennings,* 96 N. C., 83, holding that "The clerk of the Secretary of State has no power to certify to and affix the great seal of the State to copies of grants and other papers from the Secretary of State's office, to be used in evidence. The statute contemplates that this officer should do all official acts himself, and does not permit any of them to be done by a deputy," and that the certified copy was competent by virtue of section 1596 of the Revisal, which reads as follows: "Copies of the plats and certificates of survey, or their accompanying warrants, and all abstracts of grants, which may be filed in the office of the Secretary of State, certified by him as true copies, shall be as good evidence in any court as the original."

I therefore conclude that the judgment ought to be affirmed on the plaintiff's appeal and reversed on the defendant's appeal.

JUSTICE WALKER concurs in this opinion.