---

(No. 12504.—Reversed and remanded.)
SYBIL TUCKER, Admx., Defendant in Error, *vs.* CARL MUELLER *et al.* Plaintiffs in Error.

*Opinion filed April 15, 1919.*

1. BILLS AND NOTES—*whether indorser is personally accommodated is question of fact—corporations.* Where a note is indorsed in blank on the back at or before its delivery the question whether the indorsers are personally accommodated is a question of fact, and there is no presumption that they are benefited because they are officers of the corporation giving the note.

2. SAME—*indorser is not liable in absence of due presentation and notice of dishonor.* Under the Negotiable Instrument act an indorser, or one who is deemed to be an indorser under section 63 of the act, will not be held liable in the absence of due presentation of the note to the maker and notice of its dishonor to the indorser.

3. SAME—*one who indorses a note in blank at or before delivery is merely an indorser.* Under the Negotiable Instrument act of 1907 a person who indorses a note in blank on the back, at or before the time of its delivery to the payee, must be held only to the liability of an indorser, unless there are words showing his intention to be bound in some other capacity.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding.

LANDON & HOLT, (JOHN B. FRUCHTL, of counsel,) for plaintiffs in error.

CHURCH & McMURDY, and HOWARD M. HARPEL, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a case in assumpsit brought originally by Harry G. Tucker in the superior court of Cook county on a promissory note for $2000, with interest. Tucker died during the pendency of the suit, and his widow, as administratrix of his estate, was substituted as plaintiff. On a trial in the superior court judgment was entered in plaintiff's favor in the sum of $2400. On appeal to the Appellate Court the judgment of the trial court was affirmed, and the case has been brought here by petition for *certiorari*.

The note in question was executed September 15, 1913, by the National Fuel-Saver Corporation for $2000, due four months after date, to the order of H. G. Tucker, with interest at six per cent from maturity. The note was signed by H. B. McMeal as secretary and treasurer of said corporation and by Carl Mueller as general manager of the same. It was signed on the back, "H. B. McMeal," "Carl Mueller." Plaintiffs in error filed two affidavits of merits, which were successively stricken, and a second amended affidavit of merits was filed by each of them, and these affidavits were, on motion, stricken by the court. Plaintiffs in error electing to stand by their second amended affidavits, an order of default was entered against them for want of an affidavit of merits, and judgment followed.

The substance of each of the second amended affidavits of merits of the plaintiffs in error is as follows: The cor-

poration that made the note was organized with Harry G. Tucker as president, McMeal as secretary and treasurer and Mueller as general manager, all three being stockholders. After its organization it needed funds to promote its interests and the note in question was accordingly executed. In December, 1913, a meeting was held at the request of plaintiffs in error for the purpose of having the note in question and other outstanding notes of the corporation presented and paid while the corporation had funds and that plaintiffs in error be released from their liability on said note. At this meeting all other notes were paid and Tucker was requested to present his note and was told that it would then be paid, but that Tucker informed plaintiffs in error that he did not need the money at that time; that the note was at that time in his safety deposit box and he would turn it over to the corporation but would accept payment of the note by credit on the books of the corporation and would release plaintiffs in error from liability; that he requested them to credit him on his personal account on the books of the corporation with $2000 and interest, which they did; that thereafter Tucker stated this fact to prospective customers, on the strength of which they subscribed for stock; that through some mistake the note was never canceled and was turned in to the corporation shortly after the time of said meeting, but that plaintiffs in error did not know the note was still outstanding and uncanceled until about a year after it had become due and after the corporation had been adjudged a bankrupt.

Plaintiffs in error argue that the second amended affidavit of merits stated a sufficient defense, because the pleadings show that they must be held to be merely indorsers, and that therefore they were entitled to notice of dishonor of the note by the maker, and that in the absence of such notice they are discharged from their liability as indorsers; while counsel for defendant in error argue,—and it was so held by the Appellate Court,—that plaintiffs in error were

accommodation indorsers of the note in question, and therefore were not entitled, under the present Negotiable Instrument act, to notice of presentment or dishonor.

Section 63 of the Negotiable Instrument act provides that "a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicated by appropriate words his intention to be bound in some other capacity." (Hurd's Stat. 1917, p. 2006.) Section 88 of the same act states: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." (Ibid. p. 2009.) Section 114 of the same act provides: "Notice of dishonor is not required to be given to an indorser in either of the following cases: * * * 3. Where the instrument was made or accepted for his accommodation." (Ibid. p. 2011.)

It is argued by counsel for defendant in error that the note in question was executed for the benefit of plaintiffs in error, and that therefore they come within the provisions of section 114 last quoted, rendering it unnecessary to give them notice in order to charge them as indorsers. It has been held by the Tennessee Supreme Court under an act very similar on this point to ours, that it is a question of fact whether the indorser is personally accommodated, and this may be shown by words on the note or otherwise, but that there is no presumption that they are personally accommodated because they are also members of the firm or stockholders in the corporation making the note on which they appear as indorsers. (*Nolan* v. *Wilcox Motor Co.* 137 Tenn. 667.) The Federal court of appeals, in construing the Negotiable Instrument act of Pennsylvania, which is very similar on the question here involved to our own statute, stated in *McDonald* v. *Luckenbach,* 170 Fed. Rep.

434, on page 437: "We think there is no evidence disclosed by the record tending to show that anything else was contemplated by those who negotiated this loan than that it was to be a loan to the corporation for the promotion of its business, for which the corporation was to be primarily bound by the promissory note which it made, and that the directors who loaned their credit by indorsement assumed the secondary liability of indorsers and none other. All the evidence is consistent with this statement of the transaction, and no other interpretation, it seems to me, can be given to it, unless, indeed, directors and officers of a corporation interested in its successful operation cannot, in negotiating a loan for the benefit of the corporation, insure its credit by assuming only the liability of indorsers of its negotiable paper. Such a proposition, of course, can be sustained neither by reason nor authority. In the present case all the evidence tends to show that the payee of the note had no other thought than that the security he held for his note was what it purported to be on its face,—*i. e.*, the primary liability of the corporation as maker and the secondary liability of the defendant and his two colleagues as indorsers. No apparent eagerness or zeal on the part of these indorsers and the payee to raise this money for the purposes of the corporation can obscure or contradict the evident intention that the form of the contract and the liability of the parties thereto, given and taken in security for the loan, should not be other than as indicated on the face of the instrument itself. In no other sense than as active and zealous business managers can they be called, as the learned judge of the court below calls them, the real parties in the transaction, and we cannot agree with him that the evidence shows that the loan was made directly to these three directors, for their own purposes or otherwise. In transactions of this kind the corporate entity is as distinct from its officers and directors as it is from third persons with whom it transacts business, and stockholders or

directors who lend their individual credit to the corporation of which they are members, by indorsement of negotiable paper or otherwise, are entitled to the same rights and immunities which attach to the status of indorser or surety where third parties have assumed those liabilities." To the same effect is *Houser* v. *Fayssoux,* Ann. Cas. 1917B, 835, (168 N. C. 1,) with a somewhat extended discussion in a note, reaching the same conclusion that a stockholder or officer of a corporation who indorses its negotiable notes should be held an indorser and not liable thereon in the absence of notice of dishonor. See, also, *Murray* v. *Third Nat. Bank of St. Louis,* 234 Fed. Rep. 481, construing the Negotiable Instrument act of Ohio.

We do not agree with counsel for defendant in error that *Bank of Memphis* v. *Busby,* 120 Tenn. 652, holds contrary to the above decisions. In that case it was stated that the testimony showed as a fact that the money was borrowed for the benefit of the indorsers, and that the indorsers were, in effect and in law, joint makers.

It is generally held that inasmuch as the Negotiable Instrument act fixes the status of the signature as that of indorser, parol evidence is not admissible to show a contrary intention, although some authorities hold to the contrary. (8 Corpus Juris, 78, and cases cited.) It is, however, unnecessary to discuss the question whether or not parol evidence is admissible here, because no evidence was taken on the hearing, it being conceded in the briefs of defendant in error that if plaintiffs in error are not accommodation indorsers or guarantors they will not be bound if they were not given notice of the dishonor.

Counsel for defendant in error further argue that the plaintiffs in error can be held as guarantors; that the first count of the declaration alleges that they were indorsers or guarantors, and that by the second affidavit of merits filed they conceded that they signed as guarantors, and that they have not denied the allegations of the declaration that

they were guarantors in the second amended affidavit, upon which the case was finally disposed of in the trial court. Under the repeated decisions of this court there can be no question that prior to the enactment of the Negotiable Instrument act the indorsement of a note in blank by a third party at the time of its execution created a presumption that the indorser intended to assume the liability of a guarantor, though the presumption might be rebutted by parol evidence of the real agreement. It has also been held that in a suit on a promissory note or an indorsement thereof it will be presumed, in the absence of evidence, that an undated indorsement was made at the date of the note. (*DeClerque* v. *Campbell,* 231 Ill. 442, and cases cited.) This court has also held that he who guarantees the payment of a promissory note at its maturity by writing his name across the back thereof is not entitled to notice of its non-payment. (*Pfaelzer* v. *Kau,* 207 Ill. 116.) But these decisions were all rendered prior to the enactment of the Negotiable Instrument act in 1907. Since the enactment of this statute in the various States it appears to be uniformly held, under provisions similar to our own here under discussion, that an indorser will not be held liable in the absence of due presentation to the maker for payment and notice of dishonor. (8 Corpus Juris, 75-79, inclusive, and cases there cited.) "The indorser's undertaking is predicated upon conditions, and unless they are performed his liability cannot be made absolute so as to entitle the holder to an action against him. Under the law merchant an indorsement of a bill or note amounts to a contract on the part of the indorser that if, when duly presented, the note is not paid by the acceptor or maker the indorser will, upon due and reasonable notice given him of the dishonor, pay it to the indorsee or other holder. The Negotiable Instrument law, which merely declares the rules of the common law, provides that 'he engages that on due presentment it shall be accepted or paid, or both, as the case may be, according to

its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it.' The indorser's liability as such becomes fixed when demand of payment of the note is made of the principal on the day that it falls due, is refused and he is notified thereof." (3 R. C. L. 1147; see, also, to the same effect, 1 Daniel on Neg. Inst.—6th ed.—806-808, inclusive, and cases there cited; Norton on Bills and Notes,—4th ed.—189-193, inclusive, and cases cited; Selover on Neg. Inst.—2d ed.—203, 206.)

It will be seen by an examination of these authorities that under similar provisions of the Negotiable Instrument act the conclusion is now settled, beyond question, by the express provisions of the act, that the person who indorses a note in blank under circumstances as here set forth is merely an indorser and is not bound in the absence of notice of dishonor. In our judgment the provisions of our Negotiable Instrument act, as enacted in 1907, must be held to have changed the rule announced in the previous decisions of this court that the liability of a person who indorsed a note in blank on the back, at or before the time of its delivery to the payee, was *prima facie* that of a guarantor, and we are of the opinion that in the light of these provisions of the act he must be held only to the liability of an indorser. (Corpus Juris, 77, 78.)

In view of our conclusions on the questions already considered we deem it unnecessary to consider or discuss the other questions raised in the briefs.

The judgments of the Appellate and superior courts must be reversed and the cause remanded to the superior court for further proceedings in harmony with the views herein expressed.                *Reversed and remanded.*