## Katz Finance Company, Appellee, v. Joseph Levy, Appellant.

### Gen. No. 30,968.

1. NEGOTIABLE INSTRUMENTS—*when signature in blank on back of note renders signer liable as indorser.* Signature in blank on the back of a chattel mortgage note payable in instalments held to render the signer liable as an indorser thereof, no limitation of his liability appearing upon the instrument.

2. NEGOTIABLE INSTRUMENTS—*admissibility or parol evidence to vary liability of indorser in blank before delivery.* Parol evidence is not admissible to vary the liability of one who indorses a negotiable promissory note in blank before delivery thereof to the payee.

Katz Finance Co. v. Levy, 241 Ill. App. 576.

3. NEGOTIABLE INSTRUMENTS—*when indorsement in blank not deemed one made after delivery within Cahill's St. ch. 98, ¶¶ 83, 84.* Where a vendor accepted in payment for the property the note of the vendee payable to a third party, and by pre-arrangement then indorsed the instrument in blank without restriction and delivered it to the named payee in exchange for the cash discount value thereof, such indorsement was not one made after delivery of the instrument within Cahill's St. ch. 98, ¶¶ 83, 84.

4. NEGOTIABLE INSTRUMENTS—*express waiver as precluding defense by indorser based upon want of notice of nonpayment by maker.* An indorser in blank before delivery cannot escape liability upon the note because of want of notice of nonpayment by the maker where at the time of his indorsement there appeared upon the face of the instrument an express waiver of such notice by all parties thereto, including indorsers and guarantors.

Appeal by defendant from the Municipal Court of Chicago; the Hon. ROBERT E. GENTZEL, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1926. Affirmed. Opinion filed October 5, 1926.

EDWARD H. KUBITZ, for appellant.

JONES, ADDINGTON, AMES & SEIBOLD, for appellee; ALBERT F. MECKLENBURGER and THORLEY VON HOLST, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

In a fourth-class action in contract, tried before the court without a jury, there was a finding and judgment on October 9, 1925, for $289.13 against defendant as an irregular indorser on each of two promissory notes, dated respectively March 24 and March 26, 1923, signed by a third party as maker, and made payable to the order of plaintiff. Defendant by this appeal seeks to reverse the judgment.

One of the notes was for $186, payable in 10 monthly instalments of $18.60, the first instalment being due on April 24, 1923, and upon which note no payments had been made. The other was for $106 (upon

which $40 had been paid), payable in four monthly instalments of $26.50, the first instalment being due on April 26, 1923. All instalments after maturity bore interest at the rate of 7 per cent per annum. It was not disputed on the trial that there was due plaintiff on both notes, including interest, the said sum of $289.13. On the back of each note was defendant's signature in blank, "Joseph Levy," and embodied in the face and printed in small type above the signature of the maker was the following:

"This note is secured by a chattel mortgage, of even date herewith. If any installments of this note be not paid when due, then all installments hereof shall immediately become due at the option of the legal holder hereof, without notice or demand. All the parties to this note, *including sureties, endorsers and guarantors,* hereby severally *waive* presentment for payment, notice of non-payment, protest, notice of protest, and diligence in bringing suit against any party hereto, and all endorsers and guarantors hereon hereby consent that time of payment may be extended from time to time after maturity without notice to them."

Defendant's main contention is that defendant is not liable to plaintiff (the payee and holder of the note) as indorser or guarantor thereof, because defendant's testimony, and that of another witness for him, disclosed that, when he indorsed the notes and delivered them to plaintiff and the latter "discounted" them and paid the defendant the total of their face value less discount charges, it was *verbally* agreed between plaintiff and defendant in substance that defendant's liability as indorser or guarantor, in the event the notes were not paid by the respective makers, was contingent upon plaintiff's returning to defendant two automobiles, upon which said makers respectively had given chattel mortgages as security and of which plaintiff would in the meantime have

gained possession by foreclosure of the mortgages, and because said testimony further disclosed that plaintiff had not tendered or returned to defendant said two automobiles and in other respects had not complied with said verbal agreement.

Defendant was in the business of selling automobiles in Chicago and plaintiff's business partly was that of discounting for a consideration notes of purchasers of automobiles secured by chattel mortgages thereon. A purchaser of an automobile from defendant usually paid part of the purchase price to him in cash, and he would take said purchaser's note, payable in monthly instalments, for .the balance and secured by a chattel mortgage on the car. Many of such notes, perhaps as many as 200, defendant had delivered to plaintiff, and it would discount them, and defendant would receive in cash or by check the face value of the notes less the discount charges. Substantially the same procedure was followed as to the two notes in question, only that in the instant case plaintiff was named as payee of the notes, and, before delivery of them by defendant to plaintiff, defendant, at the request of plaintiff's president, Katz, indorsed them in blank in the manner stated. This transaction occurred in plaintiff's Chicago office shortly after the dates of the notes, in the latter part of March, 1923. Katz testified in substance that, after the notes had come into plaintiff's possession, it had only been able to collect from one of the makers the sum of $40, which collection had been made through defendant; that nothing further had been collected on either of the notes, although plaintiff had endeavored to collect the various instalments as they came due; that plaintiff had never been able to find or obtain possession of the automobiles for which the notes had originally been given by the purchasers thereof, although it had searched for them; and that the witness repeatedly had advised defendant by telephone of the

nonpayment by the makers of the several instalments of the notes and of the fact that plaintiff had not been able to locate the automobiles. The witness denied that plaintiff had made any such verbal contract with defendant, at the time of the delivery of the notes to plaintiff, as claimed. Defendant's testimony was to the effect that at the time of the delivery of the indorsed notes to plaintiff, a verbal agreement substantially as above stated was made as regards his indorsement being a qualified one and his liability as such indorser being dependent upon plaintiff doing the things stated, which it did not do, and that defendant never was notified by telephone or otherwise of the fact of the nonpayment by the makers of said notes or any of the indebtedness thereof.

It is evident from the court's finding and judgment, and its refusal to hold certain propositions of law requested by defendant, that it regarded defendant as an indorser, as distinguished from that of a guarantor, of the notes, and liable as such; and that, although the court had admitted defendant's evidence concerning the alleged verbal contract mentioned, the court had disregarded the same on the theory that defendant's written contract of indorsement could not be varied or explained by parol evidence.

In view of the evidence and the provisions of the present Negotiable Instruments Law of Illinois, we are of the opinion that defendant's status was that of an indorser on the notes and that he is liable as such (*Tucker v. Mueller*, 287 Ill. 551, 558), and that the judgment against him was right and should be affirmed. There is no qualification or limitation as to his liability as such indorser appearing on the instruments themselves. It is provided in sections 63 and 64 of said Law (Cahill's St. 1923, ch. 98, ¶¶ 83, 84): "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indi-

cated by appropriate words his intention to be bound in some other capacity." And "where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules: (1) If the instrument is a note or bill, payable to the order of a third person, * * * he is liable to the payee and to all subsequent parties. * * *" And we think that defendant's liability as an irregular indorser in blank on the notes in question could not be varied or explained by parol evidence. In an annotation in 37 A. L. R., p. 1223, concerning the question, it is said: "The greater number of jurisdictions hold that under the Negotiable Instruments Act the status of indorser fixed by the act upon one, not otherwise a party, who places his signature upon the instrument in blank before delivery, cannot be varied by parol evidence." That this is also the law of Illinois is disclosed from decisions in cases arising after the passage of our Negotiable Instruments Law in 1907. *Kopf v. Yordy,* 200 Ill. App. 409, 415; *Muntz v. Schmidt,* 213 Ill. App. 641, 643; *Kroll v. Hoyt,* 214 Ill. App. 428, 429. And that the contract of indorsement could not be varied by parol evidence was the law of this State before said Negotiable Instruments Law was passed is disclosed from the following cases: *Johnson v. Glover,* 121 Ill. 283, 286; *Hately v. Pike,* 162 Ill. 241, 247; *Bradley v. Brown,* 146 Ill. App. 297, 299.

And we do not think there is any force in counsel's contention that defendant indorsed the notes *after* delivery to plaintiff. The argument in this connection is, as we understand it, that, although plaintiff did not receive the notes and discount them until after defendant had indorsed them as shown, nevertheless, when the makers of the notes delivered them to defendant, there was then a *presumptive* delivery to *plaintiff,* on the theory that defendant was plaintiff's

agent, and delivery to the agent was delivery to the principal. In support of the argument counsel cites the case of *Gordon v. Adams,* 127 Ill. 223, 226, where it is said: "It is not, however, indispensable to the delivery of a promissory note that it should pass into the personal possession of the payee. If delivery is made to another, *for the payee,* without condition, his acceptance of it may be presumed, and the delivery of it will be complete." The cited case is inapplicable to the facts in evidence, which did not disclose that defendant was plaintiff's agent to receive for *plaintiff* the notes in question, or similar ones. Furthermore, it appears that plaintiff consented to discount the notes only upon the condition that defendant indorse the same, and when plaintiff received the notes and parted with its money the notes bore defendant's indorsements.

Nor do we think that there is any merit in counsel's further contention that defendant is not liable because no notice of nonpayment by the makers of the notes was given to defendant as indorser thereof. It is true that in section 88 of said Negotiable Instruments Law [Cahill's St. ch. 98, ¶ 110] it is provided: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." But embodied on the face of the two notes in question there is the express waiver of such notice by *all parties* to the notes, including the *indorsers and guarantors.* And in section 108 of said Negotiable Instruments Law [Cahill's St. ch. 98, ¶ 130] it is provided: "Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." And in section 109 [Cahill's St. ch. 98, ¶ 131]: "Where the waiver is embodied

in the instrument itself, it is binding upon all parties, * * *."

For the reasons indicated the judgment of the municipal court is affirmed.

*Affirmed.*

FITCH and BARNES, JJ., concur.