CORPORATION COMMISSION OF NORTH CAROLINA, BANK OF BEL-HAVEN AND A. G. SMALL, LIQUIDATING AGENT OF THE BANK OF BELHAVEN, v. GEORGE L. WILKINSON AND META SAVAGE WILKINSON.

(Filed 23 September, 1931.)

1. **Bills and Notes D b—Liability of parties on note is fixed by Negotiable Instrument Act and different liability may not be shown by parol.**

   Since the enactment of the Negotiable Instruments Law, a person who places his name on a note otherwise than as maker, drawer, or acceptor is deemed to be an endorser unless he clearly indicates his intention to be bound in some other capacity, C. S., 3044, and as against the holder he may not show a different liability by parol, and the rule, theretofore existing, to the effect that the parties to a negotiable instrument may prove as between themselves whether they have affixed their signatures as joint promisors, endorsers, guarantors, or accommodation endorsers, is changed.

2. **Bills and Notes D c—Endorsers held relieved of liability under facts of this case by extension of time for payment given maker.**

   Where the maker of a negotiable instrument, with accommodation endorsers before delivery, negotiates the note to a bank and thereafter the bank becomes insolvent and is placed in the hands of the liquidating agent of the Corporation Commission, and the liquidating agent agrees with the maker after maturity for an extension of time for payment to

a definite date without retaining recourse upon the endorsers and without their consent, and there is a statement upon the face of the note that the "subscribers" agree to remain bound notwithstanding any extension of time given the maker for payment, *Held:* the word "subscribers" does not include the endorsers whose names appear upon the back of the instrument, and the agreement made between the liquidating agent and the maker discharges them from liability, there being no waiver of their rights under the wording of the instrument or otherwise. C. S., 3102(6), 3092.

**3. Signatures B a—Where statute requires that party subscribe signature it must be signed at the end of the writing.**

Where a statute requires that a writing be signed to bind a party to its terms it is not necessary that the signature appear at any particular place on the writing, but where the statute requires that the signature be subscribed it must be signed below and after the writing.

**4. Bills and Notes D c—Endorsers not referred to therein are not bound by agreement on face of note waiving rights upon extension of note.**

In order to bind the endorsers of a negotiable instrument to an agreement appearing upon its face, that the parties should remain bound in the event that an extension of time for payment be given the maker, it is necessary that the agreement refer specifically to the endorsers or otherwise clearly include them within its terms, and where the agreement is that the "subscribers" should remain bound it is insufficient to include the endorsers. This appeal does not present the question of the waiver by the endorsers of dishonor under Art. 8 of the Negotiable Instruments Act, or the effect of an indicated credit upon the instrument, it appearing that the agreement with the maker for an extension of time for payment was made more than a year after the credit entered on the note.

APPEAL by plaintiffs from *Stack, J.,* at March Term, 1931, of BEAU-FORT. No error.

On 7 December, 1926, J. E. Wilkinson executed and delivered to the Bank of Belhaven, the following promissory note:

"$645.00.                    Belhaven, N. C., 7 December, 1926.

Ninety days after date I promise to pay to the order of Bank of Belhaven, Belhaven, N. C., six hundred forty-five dollars, negotiable and payable at said bank, with interest after maturity if unpaid at the rate of six·per cent per annum, payable semi-annually for value received, being for money borrowed, and the subscribers agree to continue and remain bound for the payment of this note and all interest thereon, notwithstanding any extension of the time granted to the principal, and notwithstanding any failure or omission to protest this note for nonpayment or to give notice of nonpayment or dishonor or protest or to make presentment or demand for payment, hereby waiving any protest

and any and all notice of any extension of time, of nonpayment or of dishonor or protest in any form, or any presentment or demand for payment, or any other notice whatsoever.

J. E. Wilkinson.    (Seal.)

No. 31751.    Due 7 March."

On the back of the note the defendants wrote their names before the note was delivered. There appears also an undated credit of $64.30. J. E. Wilkinson died on the afternoon of 7 March, 1929, and on 2 July, 1930, the plaintiffs brought suit against the endorsers.

The following verdict was returned:

1. In what amount is J. E. Wilkinson or his estate indebted to the plaintiff? Answer: $580.70 with interest from 7 March, 1927. (By consent.)

2. Did said J. E. Wilkinson place with the Bank of Belhaven as collateral for his note of $645.00, dated 7 December, 1926, the stock certificate of ten shares in the N. B. Josey Company? Answer: Yes.

3. If so, are the plaintiffs entitled to have said stock condemned and sold and apply the proceeds thereof, or so much as may be necessary, to pay said note and interest? Answer: Yes.

4. Did the defendants sign said note of $645.00 as endorsers? Answer: Yes.

5. Is the plaintiffs' cause of action against the defendant, Mrs. Meta S. Wilkinson, barred by the statute of limitations? Answer: Yes.

6. Is the plaintiffs' cause of action against George L. Wilkinson barred by the statute of limitations? Answer: Yes.

7. In what amount, if any, is the defendant, Mrs. Meta S. Wilkinson, indebted to the plaintiffs? Answer: Nothing.

8. In what amount, if any, is the defendant, George L. Wilkinson, indebted to the plaintiffs? Answer: Nothing.

The judge instructed the jury to answer the second, third, fourth, fifth, and sixth issues "Yes," if they believed the evidence by its greater weight, and to answer the seventh and eighth "Nothing," if they believed the evidence by its greater weight. The exceptions relate to these instructions.

Judgment for the defendants, from which plaintiffs appealed.

*Ward & Grimes for plaintiffs.*
*McLean & Rodman for defendants.*

ADAMS, J. The note was due 7 March, 1927; the bank suspended payment 9 February, 1927. At the latter date G. L. Wilkinson, after paying another note he owed the bank left on deposit $64.30, for which he was

given a certificate. The Corporation Commission appointed several successive liquidating agents, the plaintiff A. G. Small taking charge of the business 16 September, 1927. Sometime after this date Small and G. L. Wilkinson had an agreement whereby Wilkinson surrendered his certificate and Small credited the note in suit with $64.30. On 7 February, 1929, J. E. Wilkinson, maker of the note, offered to deposit with the bank, or its agent, ten shares of the preferred stock of N. B. Josey and Company, issued to his wife Meta Savage Wilkinson, as security for his debt if he could "get as much time as he needed for the payment of the debt, not to run beyond 31 December, 1929." His offer was accepted and the time was extended—the debt "not to be forced prior to 31 December, 1929"—and the ten shares of stock were turned over to the bank or its representative in February or early in March, 1929. Neither G. L. Wilkinson nor Mrs. Meta Wilkinson was present when this agreement was made or had any knowledge of it.

The argument was addressed to the consideration of two questions: (1) Are the defendants discharged or relieved of liability by an extension of the time of payment granted the maker of the note? (2) As to the endorsers, what is the legal effect of the alleged "payment by offset"?

J. E. Wilkinson signed the note under seal as maker, and on the reverse side Meta S. Wilkinson, his wife, and George Wilkinson, his brother, wrote their respective names before the note was delivered to the payee. Under the law in effect prior to the adoption of the Negotiable Instruments Act the parties to a negotiable instrument were permitted to prove as between themselves whether they had affixed their signatures as joint promisors, as guarantors, or as endorsers; but under the present statute any person who writes his name on such instrument otherwise than as maker, drawer, or acceptor is deemed to be an endorser, unless he clearly indicates his intention to be bound in some other capacity. C. S., 3044; *Lilly v. Baker,* 88 N. C., 151; *Barden v. Hornthal,* 151 N. C., 8; *Wrenn v. Cotton Mills,* 198 N. C., 89.

The defendants are accommodation endorsers. This is not denied; but it is argued that according to the terms of the note the defendants are bound by the agreement of the liquidating agent and the principal that the payment be extended. In order to bind the endorsers two things are essential to such an agreement: (1) waiver of the defense that the time of payment has been extended; (2) mutual assent to a definite time when payment is to be made. In *Wrenn v. Cotton Mills, supra,* waiver of notice of dishonor was shown, but not a determinable future time when the claim was to be satisfied. In the present case the liquidating agent and the maker of the note, for value, without the assent of the

endorsers, extended the time of payment to 31 December, 1928. The bank did not reserve the right of recourse. In the absence of other facts this would bar recovery by the plaintiffs. An endorser, being secondarily liable, is discharged by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument unless made with the endorser's consent, or unless the right of recourse against him is expressly reserved. C. S., 3102; *Edwards v. Ins. Co.,* 173 N. C., 614. After a person secondarily liable has been discharged by an extension of time his liability can be revived only by contract or by estoppel. *Bank v. Vashor,* 160 Pac. (Kan.), 208. The appellants contend, however, that the endorsers have waived this defense—that the waiver is embodied in the note itself and is binding upon all parties as provided in C. S., 3092. We need not pause to enquire whether the "waiver embodied in the instrument" is merely a waiver of notice of dishonor under Article 8 of the Negotiable Instruments Law, because though the agreement named in C. S., 3102(6) must be binding, it may be express or implied, verbal or written. *Bank v. Farmers Mut. Exchange,* 92 S. E. (Va.), 918.

The appellants say that the language of the note establishes a written agreement binding upon the defendants: "And the subscribers agree to continue and remain bound," etc. The significance of the word "subscribe," when used in written instruments, must often be sought in the context and attendant circumstances. To subscribe means literally to write underneath, as one's name: *sub,* under; *scribere,* to write; or, to write below a documentary statement. Webster's New International Dictionary; New Standard Dictionary of the English Language. Circumstances may call for a different interpretation, as in case of a subscription for stock in a corporation or the attestation of wills and the execution of deeds under our statutes. *Pridgen v. Pridgen,* 35 N. C., 259; *Devereux v. McMahon,* 108 N. C., 134; *Hawley v. Upton,* 102 U. S., 314, 26 L. Ed., 179. In its popular meaning the word is usually limited to a signature at the end of a printed or written instrument. *James v. Patten,* 55 A. D. (N. Y.), 376; *Attorney-General v. Clark,* 59 At. (R. I.), 395; *Wild Cat Branch v. Ball,* 45 Ind., 213.

This Court has approved the definition with respect to the interpretation of statutes, noting a distinction between statutes requiring instruments to be signed and those requiring them to be subscribed. In reference to the first class it is not necessary that the name appear on any particular part of the writing, but as to the second class the name must be at the end of the instrument. *Richards v. Lumber Co.,* 158 N. C., 54; *Boger v. Lumber Co.,* 165 N. C., 557; *Burriss v. Starr, ibid.,* 657; *Peace v. Edwards,* 170 N. C., 64; *S. v. Abernethy,* 190 N. C., 768.

CORPORATION COMMISSION *v.* WILKINSON.

It has been held elsewhere that a waiver in the body of a note by a drawer, who of course was the maker, applied only to the drawer and not to an endorser; also that the words "we promise to pay" similarly placed in a note which was signed by only one maker do not include persons who signed their names as endorsers on the back of the note. *Bank v. Behrens Mfg., Co.,* 198 N. W. (N. D.), 467; *Williams v. Silvestein,* decided 30 July, 1931, by the Supreme Court of California.

We have examined a number of cases which are frequently cited in support of the proposition that a waiver of notice of dishonor (Art. 8, Neg. Ins. Law) is effectual against an endorser; but in the following cases the notes sued on contained words descriptive of endorsers—such, for example, as "subscribers and endorsers," "drawers and endorsers," "sureties, endorsers, and guarantors," or "makers, sureties, and endorsers": *Bank v. Johnston,* 169 N. C., 526; *Gillam v. Walker,* 189 N. C., 189; *McInturff v. Gahagan,* 193 N. C., 147; *Katz Finance Co. v. Levy,* 241 Ill. App., 576; *Owensboro Savings Bank & Trust Company's Receiver v. Haynes,* 136 S. W. (Ky.), 1004; *Corley v. French,* 294 S. W. (Tenn.), 513; *Blucher v. Eubanks,* 5 S. W. (2nd) Tex., 972; *Hoover v. McCormick,* 54 N. W. (Wis.), 505; *Bank v. Sigstad,* 65 N. W. (Ia.), 407; *Bank v. Wilka,* 71 N. W. (Ia.), 200; *Woodward v. Lowry,* 74 Ga., 148; *Sohn v. Morton,* 92 Ind., 170; *Morrison v. Grantz,* 141 S. E. (W. Va.), 394.

Whether in view of section 3092 the word "subscribers" in the note before us could, in any event, be construed to include an endorser, we are not required to decide. We are dealing, not with notice of dishonor under Article 8, but with an alleged agreement to extend the time of payment as provided in section 3102; and our opinion is that the word "subscribers" cannot reasonably be interpreted as extending to the endorsers of the note. The endorsers, therefore, were not parties to the agreement by which the bank extended the time of payment for the benefit of the principal and in consequence are discharged by the express terms of section 3102.

The result is that inquiry as to the legal effect of the agreed credit of $64.30 is unnecessary. Granting, without deciding, that the payment was voluntary and that the liability of the endorsers was thereby continued for the time, we must remember that the agreement for an extension of payment was made more than a year after the credit was entered on the note. This is distinctly proved by the evidence introduced by the plaintiffs and the agreement prevents recovery although the action would not otherwise have been barred by the statute of limitations. For this reason error, if any, in the instructions relating to the fifth and sixth issues was not prejudicial.

No error.