BOGBY et al. v. McFALL.—72 S. W. (2d) 785.

Eastern Section. January 20, 1934.

Petition for Certiorari denied by Supreme Court, June 23, 1934.

Miller, Miller & Martin, of Johnson City, for plaintiffs in error.

G. S. Chase and G. N. Barnes, both of Johnson City, for defendant in error.

PORTRUM, J. On October 3, 1925, John W. Hunter, now deceased, conveyed to J. W. Bogby and wife a certain boundary of land located in the city of Johnson City, in consideration of $6,000, of which $1,000 was paid in cash, and the balance evidenced by notes in equal amounts of $1,000, and one falling due each year thereafter, until paid. A specific vendor's lien was retained in the

face of the deed to secure the payment of the notes. This boundary of land was composed of several lots, and Bogby and wife sold one of these lots to one J. B. Shell, and in consideration Shell assumed the payment of the note of $1,000 here sued upon. The vendor indorsed the note to his son, P. P. Hunter, who is the defendant in this action. P. P. Hunter transferred and indorsed the note to the plaintiff, Mrs. W. A. McFall. Interest was paid Mrs. McFall on this note by Shell, and after maturity Shell executed a new note, secured by a trust deed upon the tract of land, due in one year. The Shell note was identical with the Bogby note, with the exception of date and so forth, with the further exception that the Bogby note provided for the payment of interest annually, whereas the Shell note provided for the payment of interest semiannually. The Bogby note was not delivered up by Mrs. McFall, but retained, and as interest was paid credited upon the back of the Bogby note. Mrs. McFall admits in her testimony that she, from time to time, extended to Shell additional time in which to pay his obligations. Before the execution of the Shell note she understood that Shell had assumed the payment of the Hunter obligation, evidenced by the note which she held.

We do not find it necessary to go into the facts in detail as the basis for an adjudication, but the conduct of Mrs. McFall was in fact an extension of the time of payment of the original obligation, on the Bogby note. By this conduct the maker's rights and the indorser's rights were materially affected and delayed, and we are assuming that the evidence establishes an extension of time for the payment of the original indebtedness, or the note sued on, to the person (Shell) who assumed the primary liability, with the assent of the holder.

We do not think the taking of the Shell note amounted to a novation of the debt; the facts upon this issue are similar to the facts in the case of Dies v. Wilson County Bank, 129 Tenn., 89, 165 S. W., 248, Ann. Cas., 1915A, 1090; and the rules of the law of novation announced in that case are applicable to the facts of this case. In this case the original note was not surrendered, but retained and credits made upon it from time to time. It appears that it was the intention of the parties that the taking of a new note was nothing more than a renewal, and there was no intention to satisfy the original debt.

In the lower court judgment was taken against Bogby and wife, the makers, and Paul P. Hunter, the indorser. The case was tried by the judge without the intervention of a jury, and is triable de novo in this court. A plea of recoupment was interposed by the defendant Hunter upon the theory that he was damaged by reason of the extension of time and the failure of the holder to foreclose her lien at a time when an adequate price for the real estate could have

been obtained, and, since the securing property has materially decreased in value, he is damaged to the extent of this depreciation. However, he insists that he, as an indorser, is released from liability upon the note sued upon, for the reason of the extension of time to Shell. He relies upon the case of Mechanics' Bank v. Hood, 126 Tenn., 443, 150 S. W., 420, as a controlling authority. And he is met by the insistence of the plaintiff that the case of Dies v. Wilson County Bank, supra, is the applicable authority to the facts in this case. The contract of indorsement in the Hood Case is similar to the contract of indorsement in this case, and in the Hood Case the indorser was released by the extension of time, but the contents of the face of the notes are materially different. And the distinction between this case and the Dies case is that in the Dies Case the surety signed the face of the note, whereas in this case the indorser signed upon the back of the note. We think these distinctions are material, and that neither of these cases adjudicate the point in issue here.

We copy the note in suit:

"$1,000.00

"Johnson City, Tennessee, October 3, 1925.

"Four years after date we promise to pay to the order of John W. Hunter One Thousand and no/100 Dollars with 6% interest payable annually at the Tennessee National Bank, Johnson City, Tennessee, for value received.

"We, the makers and endorsers, waive demand, notice and protest,' and, in the event this note is placed in the hands of an attorney for collection, upon default, we agree to pay 10% attorney's fee; and we further stipulate that any extension or extensions of time granted to the maker, prior surety, and endorser, or guarantor shall not release us or either of us; and, further, we hereby authorize and empower the president, or cashier of the Tennessee National Bank, to confess judgment in favor of the payee or holder, after maturity and default, for the amount due hereunder, before any justice of the peace or in any court of record (having jurisdiction of the amount), at any term of such court. All demands and offsets against the payee are waived in favor of any bona fide holder. Secured by vendor's lien on certain Johnson City, Washington County, Tennessee, real estate.

"No. 4          [Signed]     J. W. Bogby
"D. C. S. Bogby.''

There is printed on the back this statement:

"We, as endorsers, waive demand, notice and protest, and guarantee payment of this note, and acknowledge that we signed with full knowledge of this contract.

"[Signed]     John W. Hunter
"P. P. Hunter.''

Now, in the Hood Case, there was no reference in the face of the

note nor upon the back of the note to any waiver of the extension, of time, and this fact distinguishes this case from the Hood Case. Therefore the holder insists that the indorser is bound by the contract written in the face of the note. This is a plausible statement, and at the outset we anticipated no difficulty in determining the question, and counsel thought it unworthy of any special investigation, but we have found it a difficult question, and one upon which the courts appear not to be in harmony.

We turn first to the construction of negotiable instruments, and find the following statement of the general principle:

"A bill or note, the same as any other written instrument, must be construed as a whole, so as to give effect to every part of it, if possible. The contract must be collected from the 'four corners' of the document, and no part of what appears there is to be excluded; and it has been suggested that, inasmuch as endorsements are made on the back of a negotiable instrument, it may be said that the purport of the instrument is to be collected from the 'eight corners.' Bills and Notes, 8 C. J., section 136, page 85; 1 Daniel Negotiable Instruments (5 Ed.), section 151."

But it is equally well established that the contract of indorsement "is entirely several and independent of the contract of the maker and of prior endorsers, and is wholly unaffected" by the fact that the original instrument may be void between the maker and payee; for instance, it may be a wager contract, or void or other reasons. So it is held a contract of indorsement is a substantive contract, separable from, and independent of, the instrument on which it appears. Wachovia Bank, etc., v. Crafton, 181 N. C., 405, 107 S. E., 316, 16 A. L. R., 1375, and notes. However, the terms of the original instrument must incorporate itself, to an extent, into the terms of the indorsement agreement. But just how far the makers can incorporate within the original instrument terms and conditions applicable to the contract of indorsement is the question. Section 5 of the Negotiable Instrument Act provides in part: "But the negotiable character of an instrument otherwise negotiable is not affected by a provision which: . . . (3) Waives the benefit of any law intended for the advantage . . . of the obligor." Code 1932, section 7329. This section may authorize the maker to restrict the future contract of the indorser.

The indorser of this note at the time was also the holder, and he had full knowledge of the provisions of the note; he made a general and not a restricted indorsement to the plaintiff, which was at least an implied representation to her that her rights to extend the time to the maker was waived by the indorser. His conduct amounted to an assent of her rights to extend the time; and a waiver can be established by an express or an implied agreement. Some courts hold that a provision in a note for the extension of time of payment with-

70

out notice is binding upon the indorser. First National Bank v. Turner (1926), 4 La. App., 219; Farmers' State Bank v. Kvamm (1924), 50 N. D., 549, 197 N. W., 143; Bonart v. Rabito (1917), 141 La., 970, 76 So., 166; Kremke v. Radamaker (1926), 60 Okla., 138, 159 P., 475; Blucher v. Eubank (Tex. Com. App., 1928), 5 S. W. (2d), 972, the latter case overruling a former case holding contra.

The case of Morrison v. Frantz, 105 W. Va., 14, 141 S. E., 394, holds that, where the indorser of a promissory note, payable on demand, expressly waives "presentment, protest and notice of dishonor" on the face of the note, it is not necessary for the holder to present the note for payment. But the case of Shows v. Jackson, 215 Ala., 256, 110 So., 273, holds that a provision on the face of the note whereby all the parties, whether makers or indorsers, waive the venue provision and consent to be sued in a particular county—that this provision is not binding on the indorsers who sign on the back of the note and specifically waive only the notice of demand and so forth. And the case of Corporation Commission of North Carolina v. Wilkinson (1931), 201 N. C., 344, 160 S. E., 292, holds a stipulation in a note whereby consent to extension of time is given by the subscribers binds only those who sign at the end of the instrument and not those who sign as accommodation indorsers on the back of the note.

We have made no attempt to distinguish these two latter cases and the cases going before, for we think the distinguishing features are apparent from the statements. In the instant case we think the indorser's contract, coupled with his conduct, establishes a binding agreement entitling the plaintiff to recover from him upon the terms of the note and indorsement.

Since the indorser agreed to the extension of time, he cannot recover damages for the depreciation in value of the security pending the extension indicated. This is a case of damnum absque injuria. We think the judgment of the trial court should be affirmed, and it is so ordered.

Snodgrass and Thompson, JJ., concur.