Nash, J.
 

 It is unnecessary to say, what would be the judgment of the Court upon the question presented in this
 
 *260
 
 case, if it were
 
 res integra.
 
 We do not consider it an open question, but one settled by a course of
 
 decisions,
 
 and not now to be disturbed. Our statute of 1784 is, so far as this question is concerned, the same with the English Statute of Frauds, of the 29th of Charles II. The latter directs, that all devises of lands and tenements shall be in writing, and
 
 signed
 
 by the testator, &c , and be
 
 subscribed
 
 in his
 
 presence
 
 by three or more witnesses. The same words are used in the act of 1784, as to the act of the testator in executing the will, and as to that of the witnesses in attesting it — the first is to sign it, and the others are to subscribe it. Very soon after the passage of the statute of Charles, the fourth year thereafter, the case of
 
 Lemagne
 
 &
 
 Stanly,
 
 3 Levins, p. 1, was decided: and although it turned upon another question, yet a majority of *he Court decided, that the word
 
 sigmim
 
 meant no more than a mark. This is a leading case, showing that although the statute required the testator to sign the paper, yet, by making his mark, it was complied with. A testator, then, by making his mark, satisfies the requirement of the law. This is admitted in the argument. But it is urged, that although the mark made by a testator is within the act, yet a different word is used as to the attestation of the-witnesses, to wit: the word subscribe. That phraseology, it is true, is used, but we cannot perceive the necessity of altering the construction. Both expressions are used with the same view and to the same end — to protect testators from frauds. The words are nearly
 
 convertible terms.
 
 Mr Bailey defines a sign to be a sensible
 
 mark •
 
 or
 
 character
 
 — a
 
 subscription
 
 of one’s own name; and to
 
 subscribe,
 
 to set one’s hand to a writing. If, then, the statute is, on the part of the testator, in this particular, complied with, by making his mark, why is it not satisfied by the witnesses’ making their mark ? The inconvenience and danger of defeating wills by allowing .witnesses to attest them, who cannot write, have been strongly
 
 *261
 
 urged iii the argument. On the other hand, many evils might grow out of a rule confining the attestation to those, only, who can write. But, as before remarked, the question is not considered an open one. The opinion expressed by Lord Hardwick, in
 
 Ellis
 
 &
 
 Smith,
 
 1 Ves. Sr. p. 17, has always struck me with great force. “I think,’’ says his Lordship, “that where things are expressly required by a statute, Courts are not to say, other things shall be equivalent to them; but 1 also think, authorities established are so many laws, and receding from them unsettles property; and uncertainty is the unavoidable consequence. To the maxim of Lord Bacon, that not the decision, but the ground on which it stands, is to be regarded, I shall oppose the saying of Lord Trevor, a man most liberal in his constructions, that many uniform decisions ought to have weight, that the law may be known ; and to gratify private opinion, established opinions are not to be departed from.” Mr Phillips, 1 vol. p. 500, says, an attestation by a mark has been adjudged a sufficient subscription within the statute. And Mr Chitty, in his notes to the 2d vol. Bl. Com. p. 378 recognizes the doctrine.
 
 Harrison
 
 &
 
 Harrison
 
 8, Vez. 185 is to the same purpose. That was a bill in equity by the devisees against the heirs. The will had three witnesses, only one of whom subscribed his name — the other two made their marks. It was .held by the chancellor, Lord Eldon, to be sufficiently attested, upon the authority of a case,
 
 Gurney vs. Corbit,
 
 tried in the Common Pleas, upon a case agreed; when it was adjudged, that an attestation by a mark was sufficient; and the Chancellor observes, “Mr Sergeant Hill says, there have been a great many other cases.” This case was succeeded by that of
 
 Addy
 
 &
 
 Grix,
 
 8 Vez. 301, decided by Sir William Grant, Master of the Rolls. In Iredell on Executors, p. 16, the same doctrine is stated. In New York, where the statute of Charles has been adopted, the same principle of construction has pre
 
 *262
 
 vailed — 1 John, R. 144,
 
 Jackson vs. Vandersen,
 
 and 9 Cow. R. 94,
 
 Jackson vs. Phillips.
 
 The law must be considered as settled ; and in this state I do not know that it has ever before been questioned; and I think I may safely say, a very large portion of the wills, that have been admitted to probate, have been attested by markmen. It will not do to unsettle the law, upon the ground, that the able men, who have heretofore adjudged it, were mistaken.
 

 Per Curiam, Judgment affirmed.