IN RE WILL OF ELIJAH POPE.

(Filed November 15, 1905).

*Wills—Subscribing Witness.*

Where a witness to a will held the pen while his entire name was written, *animo testandi*, at the request of the testator and in his presence, he is an effectual subscribing witness, and this is not affected by the fact that such witness was at the time able to write his own name.

*Issue devisavit vel non,* on a paper writing propounded as the will of Elijah Pope, deceased, transferred from the clerk, and heard by *Judge B. F. Long* and a jury, at the January Term, 1905, of the Superior Court of IREDELL County.

There was testimony to the effect that there were present at the execution of the paper, the alleged testator, D. J. Fulbright, a justice of the peace, Martin Miller, Candace Pope and Charlie Pope.

D. J. Fulbright prepared the paper and same was signed by Elijah Pope as his last will and testament in the presence

of two witnesses; Martin Miller signed his name as subscribing witness and then wrote the name of the other witness, Candace Pope, who "helt" the pen while this was done, and who had been requested by the testator to subscribe as the other witness.

Martin Miller, one of the subscribing witnesses, testified to the execution of the paper writing by Elijah Pope, and that he signed as subscribing witness, and in reference to Candace Pope, who signed as witness, said: "Candace asked me to write her name. She had hold of the pen all the time I was writing her name. She and the old man asked me to write her name." Candace Pope testified: "I am daughter of Elijah Pope and lived with him. I was there the latter years of his life. Mr. Fulbright came over; father sent for him; got there about dusk; Martin Miller was there. Father signed the paper. I signed it. Father asked me to sign it. My name is C. L. Pope. I had hand on the pen; I signed it. Nobody held my hand. When I signed it I was standing at Martin's back; he was sitting at a chair at a table. He had the pen. I held the pen at the end; in this way my name was put to the will. I asked him to hold the pen. My daddy was sitting there; Mr. Fulbright was there; father was 84 years old at the time. He seemed like he always did. He died about ten months after that, I think, am not certain. He complained of heartburn; went off to the bottoms and died there; died suddenly; don't know what was the matter with him. His mind was good as usual."

It was also in evidence that Candace Pope could write. After the witnesses to the paper writing had testified, the propounder offered the same as the will of Elijah Pope. The caveators objected for that the subscribing witness, C. L. Pope, stated that she could write but did not herself subscribe her name, but authorized the other witness, Miller, to write her name, and she held the end of the pen while he wrote her name, and that therefore she did not subscribe her

name agreeably to the requirements of the statute. The objection was sustained. The propounder excepted and, from judgment against him, appealed.

*L. C. Caldwell* and *Z. V. Long* for the propounder.
*J. B. Connelly* and *R. B. McLaughlin* for the caveators.

Hoke, J. The point which the parties desired and intended to present and which the record does present, is thus stated in the case on appeal: "The only question is as to the attestation of the will by one of the subscribing witnesses, . C. L. Pope, her name appearing thereon in the normal handwriting of the other subscribing witness, M. L. Miller, and nothing appearing on the face of the paper to show that Miller had authority to sign her name, or that the subscription is not in her handwriting, except from the evidence which is set forth in the case."

On that question the court is of opinion that there was error in the ruling of the judge below; and on the testimony presented, if believed by the jury, the paper writing was properly proven as the last will and testament of Elijah Pope.

In construing the statute as to written wills, with witnesses, it is accepted law that the witness must subscribe his name to the paper writing *animo testandi,* in the presence of the testator, and after the testator has himself signed the same. *Ragland v. Huntingdon,* 23 N. C. (1st Ired.), 563; *In re Cox's Will,* 46 N. C., 321; *Chase v. Kittredge,* 93 Mass., 49. And it has been long established that the witness may properly subscribe by making his mark. *Pridgen v. Pridgen,* 35 N. C., 259; *Devereux v. McMahon,* 108 N. C., 134.

Some of the courts have also decided that the witness may subscribe by causing a third person to write the name of the witness in his presence, and that of the testator, and without such witness taking any physical part in the act. *Jesse v. Parker,* 6 Gratton, 57; *Smythe v. Irick,* 46 S. C., 299. And

the courts of New Hampshire, Kentucky, Kansas and some recent decisions in New York are to the same effect. There is strong authority to the contrary. *Riley v. Riley,* 36 Ala., 496; *Simmons v. Leonard,* 91 Tenn., 183; *McFarland v. Bush,* 94 Tenn., 538; *Hester v. Johnson,* 18 Ga. Our own court does not seem to have passed on this question directly, and it is not necessary to do so in the case before us; for the evidence is to the effect that Candace Pope held the pen during the entire time her name was being written. The witness took part in the physical act of writing her name, *animo testandi,* in the presence of the testator, at his request, and thus fulfils every requirement for an effectual subscribing witness to a will. Such requirement is stated by an approved writer as follows: "A person, to become a subscribing witness to a will, must sign his name or make his mark, or do some physical act, affixing or recognizing his name, which he intended as a subscription." Martindale on Conveyancing (2nd Ed.), p. 554. And in Underhill on Wills, vol. 1, p. 274, it is said that not only a mark with the name of the witness attached, but anything that the witness shall write with intent that it shall stand for his name, shall be a valid signing by him. It has also been held that if the witness puts his name to the paper, *animo testandi,* he may subscribe by affixing his initials, and his hand may be even guided by another.

If the witness can effectually subscribe in the many modes suggested, it would seem that he could do so when he holds the pen while his entire name and full signature is written. The only reason suggested against the validity of this attestation is the fact that the witness was able to write herself, and it is contended that this kind of signature is only sanctioned when the witness is unable to write, or at most, when temporarily disabled. But the authorities do not support this position. As a matter of fact, in most cases where the witness has been permitted to subscribe in this way, he was

unable to write, but this fact was not regarded as essential and should not be controlling. One principal purpose in requiring the attestation of wills is to surround the testator with witnesses who are charged with the present duty of noting his condition and mental capacity. Another is to insure the identity of the instrument and to prevent the fraudulent substitution of another document at the time of its execution. Taking part in some physical act in the presence of the testator by which the name of the witness is affixed to the instrument *animo testandi* is the essential feature of the requirement. *In re Cox Will, supra.* It is always desirable that a witness who can write his name should be selected and that he should write the signature in his own hand; but this is a matter of convenience in the probate of the paper, more particularly in case of the death of the witness, and does not bear with special force on the act of execution—the *res gestae.* Thus in *Harrison v. Elvin,* 43 Eng. Com. Law, 658, where it was urged upon the court that only a witness who could write should be allowed as a subscribing witness, because otherwise the signature could not be proved after his death, Lord Denman rejected the suggestion as controlling, saying that this was only an inconvenience and likely to arise in any kind of an attestation. It is not of the first importance, therefore, whether the witness could or could not write, and the authorities are to the effect that to become an effectual subscribing witness by making a mark, or in the other ways suggested, it is not necessary to show as a prerequisite that the witness was unable to write. In Martindale on Conveyancing, section 190, it is said: "It may be observed that it is not necessary that a party should sign his name; but his mark is sufficient, though he should be able to write." In 3 Washburn on Real Property, 286, we find it stated as follows: "Affixing his mark by the grantor against his name, though written by another, is a signing, though it do not appear that he cannot read or write." These authorities are cited with

approval in *Devereux v. McMahon, supra,* 142, 144. In 1 Williams on Executors, 134, it is said that the decisions on the construction of the Statute of Frauds appear to make it clear that in case of the witness as well as the testator, the subscription by mark is sufficient, notwithstanding the witness is able to write. In *Jesse v. Parker, supra,* it is not stated that the witness could not write, and in *Smythe v. Irick, supra,* it expressly appears that the witness could write, and it was held that this fact did not affect the principle.

It will be noted that these two last cases are from courts which maintain the position that a subscription can be made without any physical or manual act by the witness at all; but they are apt as authorities on the position now being maintained. The point is expressly decided against the position of the caveators in *Baker v. Denning,* 43 E. C. L., 335—80 Adol. & Ellis, 74. The witness, Candace Pope, having taken part in the physical act of writing her name as witness, and this having been done *animo testandi* at the request of the testator and in his presence, the court-is of opinion that she is an effectual subscribing witness to the will, and that this result is not affected by the fact that such witness was at the time able to write her own name.

. There was error in the ruling of the court, and a new trial is awarded.

New Trial.