IN THE SUPREME COURT OF NORTH CAROLINA

No. 227PA17

Filed 7 December 2018

IN THE MATTER OF THE WILL OF JAMES PAUL ALLEN, Deceased

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 801 S.E.2d 380 (2017), reversing an order of summary judgment in favor of propounder entered on 14 September 2016 by Judge Jeffery B. Foster in Superior Court, Beaufort County, and remanding for entry of summary judgment in favor of caveators. Heard in the Supreme Court on 28 August 2018.

*Ward and Smith, P.A., by John M. Martin; and Ranee Singleton for propounder-appellant Melvin Ray Woolard.*

*Lanier, King & Paysour, PLLC, by Jeremy Clayton King and Steven F. Johnson II, for caveator-appellees Hope Robinson and Christian Robinson.*

NEWBY, Justice.

This case presents the question of whether a handwritten codicil that references a provision of a self-proving will is valid. The intent of the testator controls, and the language of the codicil must inform as to that intent. In this case the self-proving will and holographic codicil together clearly evince testamentary intent by simply referencing the applicable portion of the will to amend. Nonetheless, a genuine issue of material fact exists whether the phrase "begin[n]ing 7-7-03" shows the testator's then-present testamentary intent. Accordingly, this issue is not

appropriate for summary judgment but instead presents a question of fact for the jury to resolve. As such, we reverse the decision of the Court of Appeals and remand this case to that court for further remand to the trial court to continue with the proceedings.

On 29 August 2002, the testator, James Paul Allen, executed a typewritten will, drafted by his attorney, that constituted a properly attested self-proving will according to the requirements of North Carolina General Statutes section 31-3.3 (hereinafter "the will"). N.C.G.S. § 31-3.3 (2017). The will included the following relevant dispositions:

### ARTICLE III

I will, devise and bequeath all of my real and personal property of every sort, kind and description, both tangible and intangible, wheresoever located, in fee simple absolute unto, RENA T. ROBINSON . . . .

### ARTICLE IV

In the event, RENA T. ROBINSON, does not survive me, I will and devise a life estate unto, MELVIN RAY WOOLARD, in all real property located in Beaufort, Hyde and Washington Counties with a vested remainder therein unto, HOPE PAIYTON ROBINSON and CHRISTIAN ANN ROBINSON, in equal shares, in fee simple absolute, subject to the life estate herein devised unto MELVIN RAY WOOLARD.

### ARTICLE V

In the event, RENA T. ROBINSON, does not survive me, I will and bequeath, all remaining real and personal property both tangible and intangible, wheresoever located, to include all farming equipment unto my nephew,

MELVIN RAY WOOLARD, in fee simple.

Thus, according to the will, Rena T. Robinson, with whom the testator had a relationship, received the testator's real and personal property in fee simple absolute should she survive him. If she did not, the testator's nephew, Melvin Ray Woolard (Woolard), would receive "all remaining real and personal property both tangible and intangible, wheresoever located." Woolard would likewise receive a life estate "in all real property located in Beaufort, Hyde and Washington Counties" subject to "a vested remainder therein [to] Hope Paiyton Robinson and Christian Ann Robinson" (the Robinsons), the granddaughters of Ms. Robinson.

Sometime after the will's execution, the following handwritten notation[1] was added to the will within the text of Article IV (pages 5 through 6 of the will):

---

[1] This opinion references the handwritten notation as "the codicil" based on the term's definition in *Black's Law Dictionary*, which includes that, "[w]hen admitted to probate, the codicil becomes a part of the will." *Codicil, Black's Law Dictionary* (10th ed. 2014).

Given that the will included no provision benefitting the Robinsons other than Article IV, that notation, if a valid codicil, modifies the will and disinherits the Robinsons in favor of Woolard.

Ms. Robinson died on 5 July 2012, and the testator died on 8 March 2014. On 13 March 2014, Woolard filed an affidavit for probate of the will with the codicil. The testator's niece averred that she found the will among the testator's valuable papers or effects, and two others averred that the codicil matched the testator's handwriting. On 1 October 2015, the Robinsons contested the will, asserting that the handwritten notes did not constitute a holographic codicil to the will. On 10 March 2016, the Clerk of Court transferred the matter to Superior Court, Beaufort County, which granted summary judgment in favor of Woolard and ordered the Clerk of Superior Court to probate the will as modified by the codicil. The Robinsons appealed, arguing that the trial court erred by ruling that the handwritten note disinheriting the Robinsons constituted a valid holographic codicil to the will.

On appeal the Court of Appeals held that, even if the testator handwrote the notation in the margin of the 29 August 2002 will, that notation did not meet the requirements for a valid holographic codicil to the will. *In re Will of Allen*, ___ N.C. App. ___, 801 S.E.2d 380, 385 (2017). Relying on *In re Will of Goodman*, 229 N.C. 444, 50 S.E.2d 34 (1948), and *In re Will of Smith*, 218 N.C. 161, 10 S.E.2d 676 (1940), the court reasoned that, "where the meaning or effect of holographic notes on a will requires reference to another part of the will, the holographic notations are not a valid

holographic codicil to the will." *Id.* at ___, 801 S.E.2d at 384. Moreover, the court noted that, "[i]n addition to the requirement discussed above, a codicil, whether typewritten or handwritten, must establish a present testamentary intention of the decedent, and not merely a plan for a possible future alteration to the decedent's will." *Id.* at ___, 801 S.E.2d at 385. Because the court found it "necessary to incorporate or refer to the contents of 'Article IV' to which the note refers" to understand the handwritten notation and determined that the provision "begin[n]ing 7-7-03" could have been an intent to make a future change to the will, it concluded that the handwritten notation is not a valid holographic codicil to the will. *Id.* at ___, 801 S.E.2d at 385. Thus, the Court of Appeals held the trial court erred in granting summary judgment for Woolard and directed the trial court to grant summary judgment for the Robinsons, the caveators. *Id.* at ___, 801 S.E.2d at 385-86. This Court allowed discretionary review. *In re Will of Allen*, 370 N.C. 693, 811 S.E.2d 158 (2018).

"This Court reviews appeals from summary judgment de novo." *Ussery v. Branch Banking & Trust Co.*, 368 N.C. 325, 334-35, 777 S.E.2d 272, 278 (2015) (citation omitted). A trial court may grant summary judgment if, when viewed in a light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2017). Thus, "[t]he

movant is entitled to summary judgment . . . when only a question of law arises based on undisputed facts." *Ussery*, 368 N.C. at 334, 777 S.E.2d at 278 (citation omitted). "A genuine issue of material fact 'is one that can be maintained by substantial evidence.' " *Id.* at 335, 777 S.E.2d at 278 (quoting *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' and means 'more than a scintilla or a permissible inference.' " *Id.* at 335, 777 S.E.2d at 278-79 (quoting *Thompson v. Wake Cty. Bd. of Educ.*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977)).

Regarding wills and codicils, above all, "[t]he discovery of the intent of the testator as expressed in his will is the dominant and controlling objective of testamentary construction, for the intent of the testator[,] as so expressed[,] is his will." *Moore v. Langston*, 251 N.C. 439, 443, 111 S.E.2d 627, 630 (1959) (quoting *Wachovia Bank & Tr. v. Schneider*, 235 N.C. 446, 451, 70 S.E.2d 578, 581 (1952)). Thus, the initial question is whether the language of the codicil can be understood to express testamentary intent. If so, the question for the trial court when considering a motion for summary judgment in a will caveat proceeding is whether that court can determine the testator's intent as a matter of law or whether there is enough uncertainty about testamentary intent to present the issue as a jury question. *See generally In re Will of McCauley*, 356 N.C. 91, 100-01, 565 S.E.2d 88, 94-95 (2002) (noting that where conflicting evidence exists, summary judgment is inappropriate). "[I]f there is any question as to the weight of evidence[,] summary judgment should

be denied." *In re Will of Jones*, 362 N.C. 569, 573-74, 669 S.E.2d 572, 576-77 (2008) (quoting *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999)).

A decedent may direct the distribution of his estate upon his death by executing a will. *See* N.C.G.S. § 31-3.2 (2017). "A holographic will is a will . . . (1) [w]ritten entirely in the handwriting of the testator . . . (2) [s]ubscribed by the testator . . . and (3) [f]ound after the testator's death among the testator's valuable papers or effects . . . ." *Id.* § 31-3.4(a) (2017). "A written will, or any part thereof, may be revoked only . . . [b]y a subsequent written will or codicil or other revocatory writing executed in the manner provided . . . for the execution of written wills . . . ." *Id.* § 31-5.1(1) (2017).

"A codicil is a supplement to a will, annexed for the purpose of expressing the testator's after-thought or amended intention." *Smith v. Mears*, 218 N.C. 193, 197, 10 S.E.2d 659, 661 (1940) (citation omitted). "[T]he mere making of a codicil gives rise to the inference of a change in the testator's intention, importing some addition, explanation, or alteration of a prior will." *Armstrong v. Armstrong*, 235 N.C. 733, 735, 71 S.E.2d 119, 121 (1952) (citations omitted). When a codicil does not revoke the entire will, "[t]he codicil and the will considered together as a whole constitute the final disposition of [the] testator's property." *In re Goodman*, 229 N.C. at 446, 50 S.E.2d at 35 (citations omitted).

Whether will or codicil, "[t]he maker [of the instrument] must intend at the time of making that the paper itself operate as a will, or codicil; an intent to make some future testamentary disposition is not sufficient." *In re Will of Mucci*, 287 N.C. 26, 30, 213 S.E.2d 207, 210 (1975); *see also In re Will of Johnson*, 181 N.C. 303, 306, 106 S.E. 841, 842 (1921) (concluding that a decedent's letter asking a friend to prepare a will for him and describing some of the intended provisions in the will, but which the decedent retained in lieu of mailing it to the addressee, was not a will because "[t]here [was] nothing in the paper to show a present purpose that it should be the final disposition of his property"). For holographic wills and codicils specifically, "the instrument itself" must indicate the existence of testamentary intent and be "found among the deceased's valuable papers after his death or in the possession of some person with whom the deceased had deposited it for safekeeping." *In re Mucci*, 287 N.C. at 30-31, 213 S.E.2d at 210 (citations omitted). Otherwise, "the instrument may not, as a matter of law, be admitted to probate." *Id.* at 31, 213 S.E.2d at 211. On the other hand, if "a holographic instrument on its face is *equivocal* on the question of whether it was written with testamentary intent and there *is* evidence that the instrument was found among the [deceased's] valuable papers . . . the [intent] issue is for the jury and parole evidence relevant to the issue may be properly admitted." *Id.* at 31, 213 S.E.2d at 211 (emphases added) (citations omitted).

Given the nature of a codicil as "an addition, explanation, or alteration of a prior will," a codicil by definition modifies a prior will. *Armstrong*, 235 N.C. at 735,

71 S.E.2d at 121.  To be valid a codicil need not quote in its entirety any language of the will it intends to alter, and a court should not isolate the handwritten text from the will itself in construing the codicil.   A testator's reference to a specific provision of the will without restating the entire provision is not an impermissible reference to the will.  When considering the surrounding circumstances, particularly when the codicil is written on the will itself, the codicil must simply "manifest[ ] the final disposition [a decedent] wished made of her property."  *Id.* at 446, 50 S.E.2d at 36.  Any requirement to the contrary would undermine the stated purpose of will construction, which is to determine testamentary intent.

Though a holographic codicil by its name implies that all words must be entirely in the testator's handwriting, any typed words appearing on the paper "would not necessarily prevent the probate of a will" if those typed words are "not essential to the meaning of the words in such handwriting."  *Id.* at 446, 50 S.E.2d at 35.   For example, in *In re Will of Goodman* this Court held that the testator's handwritten notations placed throughout her typewritten, fully executed will constituted "a valid holographic codicil."  *Id.* at 447, 50 S.E.2d at 36.  There the testator handwrote the following provisions at various places on her typed will, followed by her signature: "To my nephew Burns Elkins 50 dollars"; "Mrs. Stamey gets one-half of estate if she keeps me to the end"; and "My diamond ring to be sold if needed to carry out my will, if not, given to my granddaughter Mary Iris Goodman."  *Id.* at 444-45, 50 S.E.2d at 34.   In assessing the handwritten provisions, the Court looked to both the

handwritten notations themselves and the typed will to determine that the handwritten additions were "not so inconsistent with the provisions of the will as to constitute revocation." *Id.* at 445, 50 S.E.2d at 35. The Court then determined that "[t]he additional words placed by [the testator] on this will written in her own handwriting and again signed by her [were] sufficient, standing alone, to constitute a valid holograph will" because, looking at the surrounding circumstances, the handwritten portions and typewritten will taken together "manifest[ed] the final disposition she wished made of her property." *Id.* at 446, 50 S.E.2d at 36. While understanding the language "one-half of estate" and "sold if needed" required referencing various provisions of the will, such references did not invalidate the codicil.

The rules applicable to will construction exist to help discern testamentary intent, which is the paramount consideration in evaluating testamentary devises. *See In re Will of Bennett*, 180 N.C. 5, 8, 103 S.E. 917, 918 (1920) (noting that "[t]he object of" the rules governing will construction "is that there may be no doubt as to the intention of the supposed testator"). Therefore, the rules must be applied to accomplish such a purpose, as occurred in *In re Goodman*.

Here the evidence, when viewed in a light most favorable to the nonmoving parties, clearly indicates that the will, including the handwritten provisions, was found among the testator's valuable papers and effects.[2] Moreover, the handwritten

---

[2] As previously noted, a holographic codicil must be entirely in the testator's

notation itself, "DO NOT HONOR ARTICLE <u>IV</u> VOID ARTICLE IV," evinces a clear

intent regarding the desired disposition for the items contained in Article IV. Those

words themselves explicitly show that the will should be modified to eliminate Article

IV. Contrary to the Court of Appeals' conclusion, the testator did not need to rewrite

all of Article IV for the handwritten notation to be sufficient.

Given that the language is sufficient to indicate testamentary intent to void

Article IV of the will, the remaining question becomes whether the phrase

"begin[n]ing 7-7-03" sufficiently indicates *present* testamentary intent. Had the

testator simply written the date, no ambiguity would exist. The term "beginning,"

however, is sufficiently ambiguous to create a genuine issue of material fact sufficient

to preclude summary judgment as to whether that provision indicates the required

present testamentary intent. *See In re Johnson*, 181 N.C. at 306, 106 S.E. at 842

("There is nothing in the paper to show a present purpose that it should be the final

disposition of his property . . . ."). In a case in which an ambiguity exists regarding

present testamentary intent, the issue is one for the jury to determine. *See In re*

---

handwriting. N.C.G.S. § 31-3.4(a)(1). The trial court granted summary judgment in favor of the propounder, concluding no genuine issue of material fact existed regarding whether the testator handwrote every portion of the codicil. Though the parties advanced arguments at the Court of Appeals about whether the provision was entirely in the testator's handwriting, the Court of Appeals did not reach that issue because it reversed the trial court's ruling and remanded for entry of summary judgment for the caveators. *In re Allen*, ___ N.C. App. at ___, 801 S.E.2d at 385. Because the parties did not advance arguments about the handwriting at this Court, we do not reach that issue in this opinion. On remand, the trial court may determine whether to revisit the handwriting issue, i.e., whether a genuine issue of material fact exists whether the handwritten provision was entirely in the testator's handwriting.

*Mucci*, 287 N.C. at 31, 213 S.E.2d at 211. Such a factual question related to the language of the notation makes summary judgment inappropriate here.

Thus, while the will and the codicil together clearly evince testamentary intent by simply referencing the applicable portion of the will to amend, a genuine issue of material fact exists whether the phrase "begin[n]ing 7-7-03" indicates present testamentary intent. Therefore, summary judgment is inappropriate here because the issue presents a question of fact properly resolved by the jury. As such, we reverse the decision of the Court of Appeals, and remand this case to the Court of Appeals for further remand to the trial court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.