IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1004

Filed 17 June 2026

Davidson County, No. 23E000964-280

IN THE MATTER OF THE REVISED WILL OF DAVID ANTHONY
GREENAMYER, Decedent.

Appeal by propounder from order entered 3 July 2025 by Judge Alyson A.
Grine in Davidson County Superior Court. Heard in the Court of Appeals
20 May 2026.

*Mark L. Hayes for caveators-appellees.*

*Craige Jenkins Liipfert & Walker, LLP, by William W. Walker, for propounder-appellant.*

ARROWOOD, Judge.

Tammy Everhart ("propounder") appeals from an order granting summary

judgment in favor of Ralph and Sara Greenamyer ("caveators"). For the following

reasons, we affirm the trial court's order.

I.     Background

David Anthony Greenamyer ("decedent") died on 23 June 2023. Caveators are

decedent's children; propounder was decedent's wife.[1]  After decedent's passing,

---

[1] Decedent and propounder were married on 11 April 2021.

propounder presented a document purporting to be his revised will ("Revised Will") to the Clerk of Superior Court for probate. The Revised Will was dated 28 January 2023 and contained decedent's signature as well as the purported signatures of two witnesses, Larry and Dennis Nash. It was notarized by Karen Nash. On 11 September 2023, caveators filed a will caveat that alleged that the Revised Will was forged. On 22 September 2023, the Assistant Clerk of Superior Court of Davidson County transferred the proceedings to the Superior Court for trial by jury.

The trial court conducted a pretrial hearing on 2 June 2025. At the hearing, propounder disclosed that the witness signatures on the Revised Will were written by Ms. Nash at the request of the witnesses. Caveators argued that under the requirements of N.C.G.S. § 31-3.3 for a written attested will, the witnesses cannot have a third party sign on their behalf, making the Revised Will invalid. Initially, the trial court agreed with caveators and asked that they draft an order granting summary judgment in their favor. However, the trial court later directed the parties to file motions for summary judgment. Both parties filed their motions for summary judgment on 5 June 2025.

For the purposes of summary judgment as to the issue of whether the witness signatures were valid, the parties agreed to the following facts, as recounted orally by the trial court at the hearing:

[T]he person who was the notary for the January 28, 2023,

will was a Ms. Karen Nash. And that Ms. Nash was the employee of the deceased, Mr. Greenamyer, and had a personal friendship with the deceased, as well as the executrix, Ms. Everhart. And that when it was time to have the will witnessed, she called in her [husband and son] . . . And they were auto mechanics and their hands were literally dirty at the time and so they said to Ms. Karen Nash, please sign on my behalf and [she] did so. So she signed with their consent and at their behest, but they never signed it and did not present any affidavit or any other such verification.

The trial court additionally found that the testator and the two witnesses were present when Ms. Nash signed their names[2] and the witnesses did not touch the pen during the signing.

On 3 July 2025, the trial court entered an order granting caveators' motion for summary judgment. The trial court concluded that N.C.G.S. § 31-3.3 does not allow witnesses to have a third party sign on their behalf, and as such the Revised Will did not comply with the statutory requirements for an attested written will. Accordingly, the trial court found that the Revised Will was invalid as a matter of law. Propounder entered notice of appeal to this Court on 14 July 2025.

## II.  Discussion

Propounder raises a single issue on appeal: whether the trial court erred in granting caveators' summary judgment motion on the ground that decedent's Revised

---

[2] Caveators argue that there is insufficient evidence that the witnesses were present with decedent when Ms. Nash signed their names. However, we do not address this argument because we hold that the will is not valid even if the signatures were made in the witnesses' and the decedent's presence.

- 3 -

Will did not comply with the requirements of N.C.G.S. § 31-3.3. For the following reasons, we affirm the trial court's order.

### A. Standard of Review

"Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.'" *Cottle v. Mankin*, 388 N.C. 531, 536 (2025) (quoting *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88 (2006)). "When considering a summary judgment motion, all inferences of fact must be drawn against the movant and in favor of the party opposing the motion." *Id.* (cleaned up). "This Court reviews appeals from summary judgment de novo." *In re Will of Allen*, 371 N.C. 665, 668 (2018) (citation omitted). We also apply de novo review to issues of statutory interpretation. *Cottle*, 388 N.C. at 536. Under de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower court[]." *N.C. Farm Bureau Mutual Ins. Co., Inc. v. Herring*, 385 N.C. 419, 422 (2023) (quoting *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680 (2018)).

### B. N.C.G.S. § 31-3.3 Attesting Witness Signature Requirement

Propounder contends where no express provision disallows the practice, witness signatures made by a third party are valid under N.C.G.S. § 31-3.3. In response, the caveators argue that when applying the canon of negative implication, N.C.G.S. § 31-3.3 does not allow attesting witnesses to sign through a third party. Caveators alternatively argue that the Revised Will is not valid because there was

insufficient evidence that Ms. Nash signed in the presence of the witnesses and decedent, and that Ms. Nash failed to comply with the procedures set out in N.C.G.S. § 10B-20(e) for the notarization of adopted signatures. The issue of whether an attesting witness may sign via adoption of a signature written entirely by a third party is one of statutory interpretation and of first impression before this Court.

"[T]he intent of the legislature controls the interpretation of a statute." *C Investments 2, LLC v. Auger*, 383 N.C. 1, 8 (2022) (quoting *State v. Fletcher*, 370 N.C. 313, 327–28 (2017)). The Court shall "first look to the plain language [of a statute], as the actual words of the legislature are the clearest manifestation of its intent." *Cohane v. Home Missioners of America*, 387 N.C. 1, 7–8 (2025) (quoting *Fearrington v. City of Greenville*, 386 N.C. 38, 52 (2024)). "[W]ords and phrases are interpreted in their statutory context, and traditional rules of grammar apply. Where the statute's language is clear and unambiguous, courts must construe it using its plain meaning." *Id.* (citations omitted).

"If the plain language of the statute is ambiguous, however, we then look to other methods of statutory construction such as the broader statutory context, the structure of the statute, and certain canons of statutory construction to ascertain the legislature's intent." *Sturdivant v. N.C. Dep't of Pub. Safety*, 386 N.C. 939, 944 (2024) (quoting *Wynn v. Frederick*, 385 N.C. 576, 581 (2023)). Additionally, the court should consider the purpose of the statute. *In re Brake*, 347 N.C. 339, 341 (1997); *see also Baumann-Chacon v. Baumann*, 212 N.C. App. 137, 140 (2011). "One of the long-

standing rules of interpretation and construction in this state is *expressio unius est exclusio alterius,* the expression of one thing is the exclusion of another." *Mangum v. Raleigh Bd. of Adjustment*, 196 N.C. App. 249, 255 (2009).

*Expressio unius est exclusio alterius*, also referred to by the trial court and the parties as "negative implication," is commonly applied in two contexts. The first is where a statute lists the situations to which it applies. *See In re Estate of Russo*, 926 S.E.2d 192, 196 (N.C. Ct. App. 2026). In that context, the inclusion of the list " 'implies the exclusion of situations not contained in the list.' " *Id.* (quoting *Evans v. Diaz*, 333 N.C. 774 (1993)) Second, the canon is applied where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act[.]" *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted); *see also Cutter v. Vojnovic*, 388 N.C. 1, 10 (2025). There, the demonstrated ability to include the provision implies that its omission elsewhere in the statute is intentional. *Russello*, 464 U.S. at 23; *Cutter*, 388 N.C. at 10. In all scenarios, "the application of the *expressio unius* canon 'depends so much on context' " and " 'must be applied with great caution.' " *Cooper v. Berger*, 371 N.C. 799, 810 (2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law* 107 (2012)).

This Court applied the *expressio unius* canon to ordinances governing the issuance of special use permits in *Mangum*. There, the requirements for issuing a special use permit for adult establishments included a provision that required a variance if the establishment was within 2,000 feet of a specialty school. *Mangum*,

196 N.C. App. at 251–52. At issue in that case was how to measure the distance between the adult establishment applying for a permit and a nearby karate school. *Id.* More specifically, this Court was tasked with determining what precise location on the lot upon which each establishment was located should be used to calculate the distance. *Id.* at 253.

The Raleigh City Code specified that when computing distances from adult establishments, " 'the term "adult establishment" includes the entire property such as parking area used for required off-street parking.' " *Id.* (quoting Raleigh City Code § 10-2144). Meanwhile, "specialty school" was defined in relevant part as a "place of regular sessions of teaching for avocational activities." *Id.* at 254. This Court concluded that because the definition of "adult establishment" specified that the "entire property" was included in distance computations but the definition of "specialty school" had no similar provision, that the location of the specialty school must not "extend beyond the areas in which regular teaching occurs." *Id.* at 254–55. Thus, we held that the distance must be measured from the part of the karate school used in furtherance of its instruction as opposed to the point of the lot closest to the adult establishment. *Id.*

Our Supreme Court similarly applied the *expressio unius* canon in *Cutter*. There, the Court considered whether the plaintiff had standing to bring a derivative claim against the defendants on behalf of an alleged partnership. *Cutter*, 388 N.C. at 9. The Court explained that "[o]ur State's statutory scheme provides for derivative

lawsuits on behalf of corporations, limited liability companies, and limited partnerships." *Id.* at 10 (citations omitted). However, the North Carolina Uniform Partnership Act "does not contain a comparable provision authorizing one general partner to assert a derivative action against another general partner on behalf of a general partnership." *Id.* Since the language authorizing derivative suits was included in some sections of the statute, but omitted in another, the Court presumed the omission was intentional. *Id.* Accordingly, the Court held that the plaintiffs lacked standing. *Id.*

Our courts have not considered whether attesting witnesses may adopt a signature made by a third party and in which they took no physical part in writing. However, our Supreme Court considered the validity of an attesting witness' signature where both the witness and the third party took part in physically writing the signature in *In re Pope's Will*, 139 N.C. 484, 52 S.E.2d 235 (1905). There, the will was witnessed by Martin Miller and Candace Pope. *Id.* at 484–85, 52 S.E.2d at 235–36. Martin signed his own name on the will and then wrote Candace's name while she held the pen. *Id.* Both Candace and the testator had requested for Martin to write her name. *Id.* The Court held that Candace's signature was valid because by holding the pen during signing, she "took part in the physical act of writing her name, *animo testandi*,[3] in the presence of the testator, at his request, and thus fulfill[ed]

---

[3] "Animo testandi" means "with testamentary intent." *See in re Mucci's Will*, 287 N.C. 26, 30 (1975).

every requirement for an effectual subscribing witness to a will." *Id.* at 487, 52 S.E.2d at 236.

Candace's physical act of holding the pen during the signing was central to the Court's decision in *Pope*. *See id.* at 486–89, 52 S.E.2d at 236–37. The Court described the signing requirement as follows: " 'A person, to become a subscribing witness[4] to a will, must sign his name or make his mark, or do some physical act, affixing or recognizing his name, which he intended as a subscription.' " *Id.* at 487, 52 S.E.2d at 236 (quoting W. B. Martindale, A Treatise on the Law of Conveyancing 554–55 (Lyne S. Metcalf, Jr. ed., 2d ed. 1889)). The Court then described several accepted methods of subscription, including affixing one's initials or having one's hand be guided by another, and reasoned that a person could also subscribe by holding a pen while their entire name and full signature is written. *Id.* at 487, 52 S.E.2d at 236–37. When clarifying that it is immaterial whether the witness had the ability to sign their own name, the Court described "[t]aking part in some physical act in the presence of the testator by which the name of the witness is affixed to the instrument *animo testandi*" as the "essential feature" of the subscription requirement. *Id.* at 488, 52 S.E.2d at 237.

---

[4] *In re Pope's Will* predates N.C.G.S. § 31-3.3 and interprets its predecessor, 1 N.C. Code of 1883, § 2136. Section 2136 of the Code of North Carolina stated that a will must "have been written in the testator's lifetime, and signed by him, or by some other person in his presence and by his direction, and subscribed in his presence by two witnesses at least . . . ." *See also* 1 N.C. Revisal of 1905, § 3113 (including identical language). Given the similarities in the language of the statutes, there is no significant distinction between the "subscribing witness" mentioned in *Pope* and an "attesting witness" under N.C.G.S. § 31-3.3 (2025).

Notably, the Court in *Pope* discussed the issue of whether a witness could adopt

a signature written solely by a third party and declined to rule on it:

> Some of the courts have also decided that the witness may subscribe by causing a third person to write the name of the witness in his presence and that of the testator, and without such witness taking any physical part in the act. Jesse v. Parker, 6 Grat. 57, 52 Am. Dec. 102; Smythe v. Irick, 46 S. C. 299, 24 S. E. 69, 32 L. R. A. 77, 57 Am. St. Rep. 684. And the courts of New Hampshire, Kentucky, Kansas, and some recent decisions in New York are to the same effect. There is strong authority to the contrary. Riley v. Riley, 36 Ala. 496; Simmons v. Leonard, 91 Tenn. 183, 18 S. W. 280, 30 Am. St. Rep. 875; McFarland v. Bush, 94 Tenn. 538, 29 S. W. 899, 27 L. R. A. 662, 45 Am. St. Rep. 760; Horton v. Johnson, 18 Ga. 396. Our own court does not seem to have passed on this question directly, and it is not necessary to do so in the case before us; for the evidence is to the effect that Candace Pope held the pen during the entire time her name was being written.

*Id.* at 486–87, 52 S.E.2d at 236. Thus, while instructive, *Pope* is not controlling here.

Our courts have recognized the validity of adopted signatures in other contexts.

For example, in *Barrett v. City of Fayetteville*, 248 N.C. 436, 438 (1958), our Supreme

Court considered the validity of nine signatures on a petition. Each challenged

signature was written by the petitioner's wife or husband, in the petitioner's presence

and at their direction, and was then adopted as the petitioner's own signature. *Id.* at

438. The Court held that the signatures were valid, stating that unless otherwise

provided by statute, it is generally permissible " 'for the maker either to sign the

instrument by affixing his own signature or to adopt a signature written for him by

another.' " *Id.* at 439 (quoting *State v. Abernethy*, 190 N.C. 768 (1925)).

Wills are invalid unless they comply with statutory requirements. N.C.G.S. § 31-3.1 (2025). N.C.G.S. § 31-3.3 governs the requirements for executing an attested will and states in full:

> (a) An attested written will is a written will signed by the testator and attested by at least two competent witnesses as provided by this section.
> (b) The testator must, with intent to sign the will, do so by actually signing the will or by having someone else in the testator's presence and at the testator's direction sign the testator's name thereon.
> (c) The testator must signify to the attesting witnesses that the instrument is the testator's instrument by signing it in their presence or by acknowledging to them the testator's signature previously affixed thereto, either of which may be done before the attesting witnesses separately.
> (d) The attesting witnesses must sign the will in the presence of the testator but need not sign in the presence of each other.

The statute details some of the requirements for witness signatures but does not include any express provision allowing or disallowing witnesses to adopt a signature made by a third party. Additionally, the term "sign" is not otherwise defined in Chapter 31. Accordingly, the plain language of § 31-3.3 is ambiguous.

Absent an express provision to the contrary, propounder urges this Court to apply the general rule in *Barrett* that a signature made via adoption is valid. However, the plain language does indicate, at a minimum, that § 31-3.3 controls the requirements for an attesting witness' signature. Just because the plain language is ambiguous does not mean that the statute does not still govern whether the signatures can be made via adoption. Thus, before considering the rule in *Barrett*,

we must ascertain the legislature's intent in § 31-3.3. We do so by turning to canons of statutory interpretation and policy considerations.

The trial court applied the canon of *expressio unius* to determine that § 31.3.3 does not allow attesting witnesses to sign via adoption of a signature made by a third party. Propounder argues that the application of the canon was erroneous because the testator's signing requirement is distinct from the witnesses' attesting requirement such that they should not be compared. We disagree. It is true that the testator and the witnesses serve distinct roles in the execution of a will, and their signatures carry different meanings. However, the actual act of signing a will is fundamentally similar. Additionally, the procedures and requirements for the testator and the witness signatures are laid out in the same statute, indicating that the requirements for each were contemplated simultaneously. Thus, the language used to outline each signing requirement is significant, and comparing the subsections of § 31-3.3 illuminates the General Assembly's intent.

The testator's signing requirements are laid out in subsections (b) and (c) which describe the physical manner of signing and the presence requirements, respectively. Subsection (b) expressly provides that the testator must sign the will "by actually signing the will or by having someone else in the testator's presence and at the testator's direction sign the testator's name thereon." Subsection (c) instructs that the testator must either sign or acknowledge their signature in the presence of each attesting witness. Meanwhile, the signing requirements of the attesting

witnesses describe only the presence requirement. Subsection (d) simply states that "[t]he attesting witnesses must sign the will in the presence of the testator but need not sign in the presence of each other."

The General Assembly's inclusion of a provision describing how the testator may sign and expressly allowing the testator to adopt a signature made by a third party indicates that the omission of a similar provision in the same statute for attesting witnesses was intentional. Accordingly, we conclude that the General Assembly did not intend to allow attesting witnesses to adopt signatures written by a third party. Rather, the witnesses must actually sign the will themselves.

Requiring the witnesses to actually sign the will also aligns with the policy behind § 31-3.3. "One principal purpose in requiring the attestation of wills is to surround the testator with witnesses who are charged with the present duty of noting his condition and mental capacity." *In re Pope's Will*, 139 N.C. at 488. "Another is to insure the identity of the instrument and to prevent the fraudulent substitution of another document at the time of its execution." *Id.* Requiring that the witnesses sign the will themselves helps ensure their presence and ability to note the testator's condition. It also lessens the chance of fraud by preventing someone from signing another's name as the witness and falsely claiming that they had adopted the signature. The witness' own handwritten signature provides additional assurance that the will was properly executed. Indeed, in order to probate an attested will where the testimony of at least one attesting witness is unavailable, our statutes

require the propounder to provide proof of the handwriting of the unavailable witness. *See* N.C.G.S. § 28A-2A-8 (2025).

Propounder argues that it is nonsensical to impose stricter requirements on the attesting witnesses than the testator because it is the testator whose intent is most important and is most likely to be the subject of fraud. However, there are several rationales that support stricter requirements for the witnesses. By nature, testators are more likely to be in poor health or otherwise struggle to physically sign the will. Yet, they cannot pass the duty of executing their will onto anyone else. Meanwhile, there are few restrictions on who can serve as a witness. If a witness cannot physically sign, the testator can find a new witness. Thus, it is reasonable to provide alternative signing methods to testators and not witnesses.

Moreover, an attested will has inherent protections against fraudulent testator signatures. The attesting witnesses themselves verify the testator's signature. Even if the testator does not sign in their own handwriting, they must acknowledge the signature before the attesting witnesses who can later testify as to its authenticity. There is no similar statutorily required party who can verify the witness signatures. Instead, the requirement that the witnesses handwrite their own signature provides additional protection against fraud.

We recognize that some witness signatures, such as the one in *Pope*, can satisfy the requirements of § 31-3.3 without being in the witness's handwriting. Compared to *Pope,* allowing witnesses to adopt a signature by a third party may not introduce

a meaningful additional threat of fraud. However, *Pope* represents a limited set of circumstances. In most cases, requiring the witness to physically sign the will themselves aligns with the statute's goal of preventing fraud. Additionally, our ultimate guiding light in this inquiry is the intent of the General Assembly, and the language of the statute indicates an intent for witnesses to write their own signature.

In sum, we hold that § 31-3.3 does not allow attesting witnesses to sign by adopting a signature written by a third party in which they took no physical part in writing. Thus, even drawing all inferences of facts in favor of propounder, the signatures of the attesting witnesses do not comply with § 31-3.3. As such, the Revised Will is invalid and the caveators are entitled to judgment as a matter of law. Having so determined, we do not reach caveators' alternative arguments.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of caveators.

AFFIRMED.

Judge STROUD concurs.

Judge TYSON concurs in result only by separate opinion.

TYSON, Judge, concurring in result only.

I concur in the result with the majority's opinion to affirm the trial court's order granting summary judgment in favor of caveators. N.C. Gen. Stat. § 31-3.3 (2025) does not allow a third-party notary, who notarized the will, to also sign on both statutorily-mandated witnesses' behalf in the absence of an acknowledgement by them or other narrow and specified circumstance.

## I.    Standard of Review

"A caveat is an *in rem* proceeding" that operates as "an attack upon the validity of the instrument purporting to be a will." *In re Will of Cox*, 254 N.C. 90, 91, 118 S.E.2d 17, 18 (1961) (citation omitted).

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2025). This Court has warned because of the factual nature of the issues presented during a caveat proceeding, "[s]ummary judgment should be entered cautiously." *Seagraves v. Seagraves*, 206 N.C. App. 333, 338, 698 S.E.2d 155, 161 (2010).

Summary judgment may only be entered in a caveat proceeding where the moving party proves no genuine issues exist as to material facts. *See In re Will of McCauley*, 356 N.C. 91, 100–101, 565 S.E.2d 88, 95 (2002). This Court reviews the trial court's ultimate determination of the summary judgment motion *de novo. In re*

*Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

## II.    Witness Signatures

The requirement of witnesses to sign a non-holographic will in the presence of the testator dates back to 1676 or 1677 with the enactment of the English Statute of Frauds.  *See* Marc P. Bouret, *Oral Will Contracts and the Statute of Frauds in California, 1896-1980: A Summary and Evaluation*, 8 Pepp. L. Rev. 41, 43 (1980); George P. Costigan, Jr. *See also The Date and Authorship of the Statute of Frauds*, 26 Harv. L. Rev. 329, 331-32 (1913) (Pope Gregory XIII abolished the Julian calendar and adopted the Gregorian calendar in 1582.  Protestant England adopted the Gregorian calendar in 1751.  The Julian calendar was eleven days ahead of the Gregorian calendar due to the vernal equinox in March.  This causes confusion in the months of January, February, and March.  Records indicate the Statute of Frauds was passed with royal assent on 16 April 1676 or 16 April 1677.  Bouret argues for the 1676 date and Costigan, Jr. argues for the 1677 date.).  The North Carolina General Assembly quickly adopted the statute of frauds by statute in 1784.  1 Laws of the State of North Carolina Ch. 204 (Potter's rev'l, 1821).  N.C. Gen. Stat. § 22, *et seq.* (2025)

Propounder concedes the facts are undisputed and does not challenge any of the trial court's stipulations of fact on appeal.  The majority's opinion cites *In re Pope's Will*, 139 N.C. 484, 486–87, 52 S.E. 235, 236 (1905), in which the Supreme Court of North Carolina did not decide whether a "witness may subscribe by causing a third

person to write the name of the witness in his presence and that of the testator, and without such witness taking any physical part in the act." The Supreme Court examined the fact the witness was literate and described several methods of subscription or acknowledgement by affixing one's initials or having their hand guided by another and affirmed a witness' signature, signed by a third party. *Id.*

Our Courts have held for nearly 175 years an illiterate witness is legally permitted to "sign" their name by making their mark. *See Pridgen v. Pridgen's Heirs*, 35 N.C. 259, 13 Ired. Law 259 (1852). The "signatures" could have been subscribed once the witnesses completed working on the vehicle and had cleaned their hands or acknowledged by the witnesses at that time. *Id.*

As an alternative basis and unreached by the majority's opinion, our General Statutes require "the attesting witnesses must sign the will in the presence of the testator but need not sign in the presence of each other." N.C. Gen. Stat. § 31-3.3(d) (2025). There is no testimony Nash signed the will on the witnesses' behalf in their presence or "in the presence of the testator". *Id.* There does not appear to be a significant difference between the term "subscribing witness" as mentioned by the Court in *Pope* and an "attesting witness" under the notary statute. N.C. Gen. Stat. § 31-3.3(2025).

## III.   Conclusion

"One principal purpose in requiring the attestation of wills is to surround the testator with witnesses who are charged with the present duty of noting his condition

3

and mental capacity." *In re Pope's Will*, 139 N.C. at 487–88, 235 S.E.2d at 237. "Another [purpose] is to insure the identity of the instrument and to prevent the fraudulent substitution of another document at the time of its execution." *Id.* Caveators have made no showing either of these purposes were not met here. *Id.*

While arriving at the proper outcome, the majority's opinion purports to "shut the door" on any third-party signing on behalf of a witness to the execution of the will. There are situations outside of *In re Pope's Will* or an illiterate witness where a third party could sign and have proper acknowledgement or attestation. *Id.*; N.C. Gen. Stat. § 31-3.3(d) (2025).

Also, if the testimony of one attesting witness is unavailable, propounder is allowed to provide proof of the handwriting of the unavailable witness. *See* N.C. Gen. Stat. § 28A-2A-8 (2025). Our decision is without prejudice to the prior will of the Testator, which this decision does not affect. I concur in the result only.